FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 0 1 2002

JAMES W. McCORMACK, CLERK
By: _____
DEPT. CLERK

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### NORTHERN DIVISION

**THOMAS ERNST AKYAR**                                         **PLAINTIFF**

**VS.**                          CASE NO. 1 - 0 2 - C V - 0 0 0 6 0

**LIFE PLUS INTERNATIONAL, INC.**                         **DEFENDANT**

### COMPLAINT

This case assigned to District Judge _____
and to Magistrate Judge _____

Comes the Plaintiff, **Thomas Ernst Akyar**, by and through his attorneys, **Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C. and Ramsay, Bridgforth, Harrelson and Starling LLP**, and for his Complaint against the Defendant, **Life Plus International, Inc.**, (hereinafter referred to as "**Life Plus**"), states:

### NATURE OF THE ACTION

1.     This is an action for declaratory and injunctive relief, compensatory damages and exemplary damages arising out of Defendant's unlawful discrimination against Plaintiff on the basis of Plaintiff's religion.

### JURISDICTION AND VENUE

2.     Jurisdiction over this action is conferred by 28 U.S.C. § 1332, in that Plaintiff is a citizen of the Republic of Germany, Defendant is a citizen of the State of Arkansas, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Venue is proper in this district under 28 U.S.C. § 1391 (a) and (c), in that Defendant resides in the Eastern District of Arkansas and a substantial part of the events giving rise to the claim occurred here.

-2-

## PARTIES

3.      Plaintiff Thomas Ernst Akyar is, and at all times relevant to the matters alleged in this Complaint was, an individual citizen of Germany and an adherent to the religion of Scientology.

4.      Defendant Life Plus is, and at all times relevant to the matters alleged in this Complaint was, an Arkansas corporation with its principal place of business in Batesville, Arkansas.

## FACTS

5.      Defendant manufactures and sells vitamins, minerals and nutritional supplements both domestically and internationally.

6.      Defendant markets its products using "multilevel" or "network" marketing practices. Pursuant to these practices, a marketing agent for Defendant may earn income in either of two ways: (1) by persuading consumers to purchase Defendant's products; or (2) by recruiting additional marketing agents, and then receiving income from sales arranged by those recruits, as well as from sales arranged by further "downline" agents, *i.e.* agents recruited by the original agent's recruits.

7.      Plaintiff began working as a marketing agent for Defendant in 1995.

8.      Plaintiff was highly successful at marketing Defendant's products, and at recruiting additional marketing agents for Defendant.

9.      In recognition of Plaintiff's superlative marketing performance and Plaintiff's fidelity to the policies and procedures of Life Plus, on or about February 4, 2000, Defendant offered Plaintiff membership in Defendant's "Diamond Bonus" program, a position reserved for high achievers in the Life Plus organization.

10.     On or about February 4, 2000, Plaintiff accepted Defendant's offer and became a Diamond member.

-3-

11.     Upon Plaintiff's acceptance of membership in Defendant's Diamond program, Plaintiff and Defendant agreed that their working relationship would be governed by terms set forth in a written agreement (hereinafter referred to as the "Diamond Agreement") which was subscribed and executed by Plaintiff and by Tim Nolan, Executive Vice President of Life Plus, on behalf of Defendant.

12.     The Diamond Agreement states that Plaintiff's eligibility for the Diamond program reflects not only Plaintiff's superior marketing performance, but also "other qualities...which include loyalty, leadership and ethical behavior."

13.     The Diamond Agreement further states that one "way you [*i.e.*, Plaintiff] have demonstrated your leadership capabilities is by abiding by the Policies and Procedures of Life Plus, providing your downline with the latest up-to-date information on these Policies and Procedures and communicating to them the importance of abiding by them."

14.     The Diamond Agreement further states that "[b]y abiding by the Policies and Procedures and otherwise not engaging in conduct that is dishonest, illegal, or unfair to those in your upline or downline, you have demonstrated the ethical behavior that represents the tradition and spirit of Life Plus."

15.     The Diamond Agreement further states that "[i]f any terms of . . . other contracts or agreements contradict this one, this one will control, and if any of the terms need to be interpreted, Arkansas law will apply and venue will be in Independence County, Arkansas."

16.     In June 2001, an article appeared in *Network Press*, a German trade journal, describing Plaintiff's successful career with Life Plus. The article identified Plaintiff by name and featured a picture of Plaintiff with the caption "Successful Scientologist." The article did not

-4-

otherwise mention or refer to the Scientology religion or to Plaintiff's belief in and adherence to Scientology.

17.     In a letter to Plaintiff dated July 2, 2001, Life Plus Europe Ltd. (hereinafter referred to as "Life Plus Europe") terminated or purported to terminate Plaintiff's contractual relationship with Life Plus Europe.

18.     Regarding the matters alleged in this complaint, Life Plus Europe acts and has acted as an agent or alter-ego of Defendant, or acts and has acted in concert with Defendant, such that all acts by Life Plus Europe alleged herein may be attributed to Defendant.  Defendant has accepted and adopted the purported termination of Plaintiff by Life Plus Europe, and has acted as if the effect of the July 2 letter was to terminate the contractual relationship between Plaintiff and Defendant.

19.     The July 2 letter states that "[r]ecently an article was published in *Network Press* with your picture where they emphasized that you are a 'practicing Scientologist.'  The reactions of the staff and sales representatives showed that this open confession of membership in the Church of Scientology cannot be accepted by the great majority."

20.     On or about July 3, 2001, Life Plus Europe released information concerning Plaintiff's relationship with Life Plus to a third-party who had inquired whether Life Plus had any connection to the Scientology religion.

21.     Although the third-party inquiry never mentioned or referred to Plaintiff, the July 3 response by Life Plus Europe bore the heading "Re: Thomas Akyar," and was largely devoted to the circumstances surrounding the termination or purported termination of Plaintiff's contract.

22.     The July 3 response by Life Plus Europe states that "Mr. Akyar admitted to our company being an active member of Scientology.  We know from leading members of our

-5-

organization that they are not willing to cooperate with Mr. Akyar because of this. They regard his membership in the Life Plus organization as a real threat to their work."

23.     The July 3 response by Life Plus Europe further states that "while Life Plus respects the right of every person to join any group of his own choice as far as his private area is concerned, Life Plus will not tolerate such a choice endangering the enterprise or the results of the hard work of members of the Life Plus organization. Therefore, a member whose membership in a certain group in his personal life threatens to be damaging to the development of the enterprise's businesses and its marketing partners now or later, due to his activities for Life Plus, cannot be allowed to remain associated with Life Plus."

24.     Through counsel, Plaintiff has urged Defendant to renounce the aforesaid discriminatory policies, practices and conduct and to honor its contractual obligations to Plaintiff, but Defendant has taken no action to remedy Plaintiff's injuries and continues to maintain that Plaintiff's contractual relationship with Defendant has been terminated.

## FIRST CAUSE OF ACTION

### (Discrimination in Contractual Transactions)

25.     Plaintiff repeats and realleges each of the allegations set forth in Paragraphs 1 through 24, inclusive, and by this reference incorporates the same as though fully set forth herein.

26.     By terminating or purporting to terminate its contractual relationship with Plaintiff because of Plaintiff's religion, and by stating a policy that membership in an unpopular or undesirable religion is grounds for termination of a contract, Defendant has willfully and intentionally violated the Arkansas Civil Rights Act of 1993, which provides: "The right of an otherwise qualified person to be free from discrimination because of . . . religion . . . is recognized

-6-

as and declared to be a civil right. This right shall include, but not be limited to: . . . The right to engage in credit and other contractual transactions without discrimination; . . . ." Ark. Stat. Ann. § 16-123-107(a), (a)(4).

27.    As a direct and proximate result of Defendant's unlawful policies and conduct, Plaintiff has been, and continues to be, deprived of substantial profits and revenues to which Plaintiff is rightfully entitled.

## PRAYER FOR RELIEF

WHEREFORE, it is prayed that Plaintiff have judgment against Defendant as follows:

27.    That this court issue a declaratory judgment finding that the termination or purported termination of Plaintiff's contractual relationship with Defendant was discriminatory and unlawful;

28.    That, pursuant to Ark. Stat. Ann. § 16-123-107(b), this court issue an injunction requiring Defendant to reinstate its contractual relationship with Plaintiff on the same terms applicable at the time immediately prior to the unlawful termination, except that any seniority or benefits shall be granted to Plaintiff exactly as if Plaintiff had never been terminated;

29.    That, pursuant to Ark. Stat. Ann. § 16-123-107(b), this court issue an injunction forbidding Defendant from applying its policy that membership in certain religious groups shall be grounds for termination of a contract;

30.    That, pursuant to Ark. Stat. Ann. § 16-123-107(b), this court award compensatory damages to Plaintiff in an amount to be determined at trial, together with interest thereon at the prevailing rate or legal rate, whichever is greater, calculated from the date at which the payments for which compensation is made first became due and payable to Plaintiff;

-7-

31.    That, pursuant to Ark. Stat. Ann. § 16-123-107(b), this court award exemplary damages to Plaintiff in an amount to be determined at trial;

32.    That, pursuant to Ark. Stat. Ann. § 16-123-107(b), this court award to Plaintiff all of Plaintiff's costs and attorneys' fees associated with bringing this action;

33.    That this court award all other and further relief that it may deem just and appropriate under the circumstances.

Respectfully submitted,

**RAMSAY, BRIDGFORTH, HARRELSON
 AND STARLING LLP**
P. O. Box 8509
Pine Bluff, AR  71611-8509
(870) 535-9000 - phone
(870) 535-8544 - fax
Attorneys for Plaintiff

By _____
        Spencer F. Robinson   77111