IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

THOMAS ERNST AKYAR                                                                    PLAINTIFF

VS.                    CASE NO. 1-02-CV-00060 SWW

LIFE PLUS INTERNATIONAL, INC.                                                        DEFENDANT

## BRIEF IN SUPPORT OF MOTION TO DISMISS

Plaintiff, a citizen and resident of the Federal Republic of Germany, seeks redress under the Arkansas Civil Rights Act of 1993, Ark. Code Ann. §§ 16-123-101, *et seq.* (the "Arkansas Act") for alleged discrimination that occurred in Germany in a German contractual relationship. Plaintiff alleges he was discriminated against because he professes Scientology as his religion. German case law holds, however, that Scientology does not enjoy the status of a religion under the Federal Republic of Germany's Basic Constitutional Law. *See* BAGE 5 AZB 21/94 (decision of Mar. 23, 1995).[1] Plaintiff accordingly cannot maintain an action under German law based on alleged religious discrimination against him, and has instead turned to the United States' judicial system and to the Arkansas Act in search of rights and remedies that are unavailable where he lives and worked and where the injury giving rise to this litigation is alleged to have occurred. In so doing, Plaintiff invites this Court to sidestep the German court's decision by determining that Scientology is a religion—which this Court must do if it grants Plaintiff relief under the Arkansas Act.

In pursuing his claim before this Court, Plaintiff seeks to extend the reach of the Arkansas Act to individuals the world over who believe themselves aggrieved by discrimination, regardless of whether those individuals and the alleged discriminatory acts have any meaningful nexus with the State of Arkansas. Nothing in the Arkansas Act even remotely suggests it is intended to be given extraterritorial

---

[1] Attached hereto for the Court's convenience is a copy of the referenced case, unfortunately still in German. A translated copy should be available within the week, and Life Plus will provide the Court a copy of the translation.

effect or should be applied to controversies arising in foreign jurisdictions and involving aggrieved parties who were neither citizens of nor visitors in the State of Arkansas when they were injured.

Plaintiff therefore lacks standing to maintain an action under the Arkansas Act, and pursuant to Rule 12(b)(1), Fed. R. Civ. P., the Court should dismiss his Complaint for want of subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Because standing . . . pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it] is properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)"); *AFGE, Local 2119 v. Cohen*, 171 F.3d 460, 465 (7th Cir. 1999). *See also Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1020 (8th Cir. 2000); *Kulinski v. Medtronic Bio-Medicus, Inc.*, 21 F.3d 254, 256 (8th Cir. 1999); *Starr v. Mandanici*, 152 F.3d 746, 747-49 (8th Cir. 1998).

## STANDARD FOR DETERMINING
## 12(b)(1) MOTIONS TO DISMISS

The allegations appearing on the face of the complaint do not limit the Court's inquiry in deciding a motion under Rule 12(b)(1), and the Court may consider matters outside the pleadings in making its decision. *Osborne v. United States*, 918 F.2d 724, 728-29 (8th Cir. 1990). The Court must in all events satisfy itself that it has subject matter jurisdiction, and under Rule 12(b)(1) the Court is not constrained to read the allegations in the light most favorable to the pleader, as under Rule 12(b)(6), or to deny the motion where there may be a triable question of fact, as under Rule 56. The Court may decide a Rule 12(b)(1) motion on disputed factual issues. *Id.* at 729-30, citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977), and *Crawford v. United States*, 796 F.2d 924, 928 (7th Cir. 1986).

## THE FACTUAL BACKGROUND SURROUNDING
## PLAINTIFF'S CLAIM SUPPORTS DISMISSAL

The face of the Complaint evidences Plaintiff's lack of standing. Plaintiff, however, pled certain allegations with deliberate vagueness, necessitating factual supplementation. The allegations in the Complaint that are material to Plaintiff's standing and additional material facts drawn from the affidavit attached to the Motion to Dismiss, are as follows:

Plaintiff "is, and at all times relevant to the matters alleged in [the] Complaint was, an individual citizen of Germany." Complaint, ¶ 3. Defendant is Life Plus International, an Arkansas general partnership ("Life Plus"). Affidavit of Robert E. Christian, at ¶ 2. (The affidavit is attached to the Motion to Dismiss as Exhibit 1, and is hereafter cited as "Ex. 1, ¶ __.").[2] At all times relevant hereto, Life Plus developed and sold Life Plus® branded vitamins and related products (collectively, "Life Plus® Products"), and owned the Life Plus® Product trademarks and all other intellectual property associated with those products. Complaint, ¶ 5; Ex. 1, ¶ 2

Life Plus Europe Ltd., a corporation located in and existing under the laws of the United Kingdom ("LP Europe") markets Life Plus® Products in Europe under a license. Ex. 1, ¶ 3. Neither Life Plus nor LP Europe (a regional distributor) is owned or controlled by the other. Ex. 1, ¶ 3. LP Europe has not been named as a party to this action.[3]

Life Plus Europe handles the distribution of Life Plus® products in Europe by contracting with independent contractors (Ex. 1, ¶ 3) who in turn may recruit additional "downline" contractors. Complaint, ¶ 6. Plaintiff contracted to become an independent contractor with LP Europe not Life Plus. Complaint, ¶ 7; Ex. 1, ¶ 4. Plaintiff's authority to sell Life Plus® Products depended on his contract with LP Europe (Ex. 1, ¶ 4), because LP Europe had the exclusive right to sell Life Plus® Products in Europe. Ex. 1, ¶ 3. As the owner of Life Plus® Product trademarks, Life Plus offered membership in its Diamond Bonus program as an incentive to contractors selling Life Plus® Products. Ex. 1, ¶ 5. Plaintiff became a Diamond Bonus member in 2000. Complaint, ¶ 10; Ex. 1, ¶ 6. Diamond Bonus membership rewards productive contractors by allowing them to earn additional commissions on high sales volumes. Ex. 1, ¶ 5. Diamond Bonus membership does not supplant a contractor's original contractual relationship with or obligation to his or her regional distributor. For example, a European member who attains Diamond

---

[2] Plaintiff erroneously alleges that Defendant is "an Arkansas corporation" (Complaint, ¶ 4) and has identified and purported to serve process upon Defendant under the misnomer Life Plus International, Inc. Plaintiff also purported to serve process upon an individual who is neither a partner in Life Plus nor an authorized agent of the partnership for purposes of process.

[3] Plaintiff alleges in conclusory fashion that LP Europe "acts and has acted as an agent or alter-ego of [Life Plus], or acts and has acted in concert with [Life Plus], such that all acts by [LP Europe] . . . may be attributed to [Life Plus]." Complaint, ¶ 18. Defendant denies this allegation, but questions of agency, alter-ego liability, concerted action and other bases for indirect liability are immaterial to this Rule 12(b)(1) motion. Even if there were a basis for alleging that Life Plus *directly* discriminated against a foreign citizen in a foreign jurisdiction, the allegedly aggrieved individual would lack standing under the Arkansas Act.

Bonus membership maintains his or her primary relationship with LP Europe. Ex. 1, ¶ 5. The continuation of the primary relationship is one of the conditions for a member's continued participation in the Diamond Bonus program. Ex. 1, ¶ 5. Indeed in the absence of a primary relationship, a contractor is not authorized to sell Life Plus® products at all, let alone a sufficient volume to earn Diamond Bonus commissions. Ex. 1, ¶ 5.

By letter dated July 2, 2001, LP Europe terminated its relationship with Plaintiff. Complaint, ¶ 17. Plaintiff alleges that Life Plus "has acted as if the effect of the July 2 letter" was to terminate Plaintiff's Diamond Bonus membership. Complaint, ¶ 18. Plaintiff does not allege any communication from Life Plus terminating his Diamond Bonus membership, nor does he allege that he is able to meet the performance requirements of the Diamond Bonus program absent a primary contractual relationship with LP Europe (or some other regional distributor).

I.  **Plaintiff Lacks Standing to Sue Under the Arkansas Act Because His Claim Arose in Germany.**

Plaintiff seeks to invoke the power of this Court to protect his perceived rights under the Arkansas Act, but individuals who neither reside in Arkansas nor have suffered injuries in Arkansas have no standing under the Arkansas Act to bring suit for redress of allegedly discriminatory conduct occurring in foreign countries. Plaintiff presents no authority that the Arkansas Act extends any protection to citizens and residents of the Republic of Germany while they are in that foreign country. To the contrary, the Arkansas Supreme Court has stated:

> The Arkansas Civil Rights Act, originally enacted in 1993, provides *citizens of this state* legal redress for civil rights violations of state constitutional or statutory provisions, hate offenses, and discrimination offenses.

*Flentje v. First Nat. Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000) (Emphasis added).

As Plaintiff admits in his Complaint, the contractual relationship at issue was his relationship with LP Europe—not Life Plus. That contractual relationship was made, performed and terminated in Germany, entirely outside of the State of Arkansas. Plaintiff's alleged injury happened in Germany.

There is simply no material connection between Plaintiff's claim for unlawful religious discrimination and the State of Arkansas, upon whose law Plaintiff purports to rely.

Although Plaintiff mischaracterizes Life Plus and LP Europe as "alter egos," for purposes of Plaintiff's standing under the Arkansas Act even if Life Plus and LP Europe were one and the same entity, Plaintiff would still be a German citizen and his alleged injury would still have occurred in Germany, not Arkansas.

Because Plaintiff recognizes his tenuous connection with Arkansas, Plaintiff attempts to bolster his Complaint with multiple references to his one connection with Arkansas: The Diamond Bonus program. While the Diamond Bonus program is connected with Arkansas, it is unrelated to the discrimination Plaintiff claims to have suffered. As Plaintiff admits, he no longer participates in the Diamond Bonus program because he no longer sells Life Plus® Products, not because he professes Scientology.

Plaintiff failed to allege a meaningful nexus of his claim and the State of Arkansas. If he has suffered discrimination, it was in his own nation. That is no basis for standing under the Arkansas Act and no basis for subject matter jurisdiction in this Court.

## II.  The Arkansas Act Does Not Apply to Extraterritorial Alleged Discrimination Against Foreign Citizens.

Nothing in the Arkansas Act suggests the Arkansas General Assembly intended to apply its provisions in foreign countries, and no court has ever given the Arkansas Act or any comparable statute the kind of limitless extraterritorial application demanded by Plaintiff. The one pronouncement of the Arkansas Supreme Court limits the Arkansas Act's reach to "citizens of this State." *Flentje v. First Nat. Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000).

The Arkansas Act uses the terms "person" and "otherwise qualified person" to describe those who are eligible to bring a cause of action for religious discrimination under the Arkansas Act. Ark. Code Ann. § 16-123-107(a) & (b). The Arkansas Act, however, does not define those two terms, and Arkansas

cases do not define "person" or "otherwise qualified person" for purposes of the Arkansas Act (although the *Flentje* Court impliedly did so).

The Arkansas Supreme Court has stated, however, "the Arkansas [Act] specifically provides that our state courts may look to state and federal decisions which interpret the federal civil rights laws as persuasive authority for interpretive guidance." *Faulkner v. Arkansas Children's Hospital*, 347 Ark. 941, 954, 69 S.W.3d 393, 401 (2002). None of the federal civil rights laws provide remedies for discrimination against foreign nationals in their homelands. Title VII of the Civil Rights Act of 1964 limits its protection to "individuals, both citizens and noncitizens, *domiciled or residing* in the United States." 29 C.F.R. § 1606.1(c) (1972) (emphasis added). Section 1983 creates a cause of action for a "citizen of the United States or other person *within the jurisdiction*." 42 U.S.C. § 1983 (2000) (emphasis added). Section 1981 states, "All *persons within the jurisdiction* of the United States shall have the same right in every State and Territory to make and enforce contracts . . . ." 42 U.S.C. § 1981 (2000) (emphasis added).

Plaintiff states in the Complaint that "at all times relevant to the matter alleged in [the] Complaint, [he] was an individual citizen of the Republic of Germany." Complaint, ¶ 3. Plaintiff is not a citizen of the United States, much less Arkansas. Nor is Plaintiff a resident of the United States or Arkansas. When the alleged action occurred, Plaintiff was not within the jurisdiction of the United States, Arkansas, or any United States territory. Plaintiff has alleged no other connection to the United States or Arkansas. Plaintiff therefore has no standing under any federal statute to complain of a violation against him of any United States civil rights law, much less the Arkansas Act.

The United States Supreme Court has held that the Fifth Amendment and the Fourteenth Amendment, from which all civil rights law flows, do not apply to non-resident, non-citizens, who are not within the jurisdiction of the United States or its Territories. *Johnson v. Eisentrager*, 339 U.S. 763, 70 S. Ct. 936, 94 L.Ed. 1255 (1950); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 73 S. Ct. 472, 97 L.Ed. 576 (1953); and *Plyler v. Doe*, 457 U.S. 202, 102 S. Ct. 2382, 72 L.Ed.2d 786 (1982).

*Eisentrager* involved a habeas corpus appeal prosecuted by twenty-one German nationals imprisoned in Germany after World War II. The Court held that the German citizens did not have standing to seek relief in the United States judicial system because the United States Constitution and laws enacted thereunder did not apply to them. *Id.* at 781. The Court bedrocked its reasoning on the following premise: "[I]n extending constitutional protections beyond the citizenry, the Court has been at pains to point out that it was the alien's *presence within its territorial jurisdiction* that gave the Judiciary power to act." *Id.* at 771 (Emphasis added). The Court then stated, "We have pointed out that the privilege of litigation has been extended to aliens, whether friendly or enemy, only because permitting their presence in the country implied protection." *Id.* at 778; *see Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L. Ed. 220 (1886) (stating Fourteenth Amendment applied to all persons within the territorial jurisdiction regardless of race).

The Court also notably commented that the application of United States law beyond its borders would be an extraordinary event:

> Extraterritorial application of organic law would have been so significant an innovation in the practice of governments that, if intended or apprehended, it could scarcely have failed to excite contemporary comment. . . . No decision of this Court supports such a view.

*Eisentrager*, 339 U.S. at 783. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 440, 109 S. Ct. 683 (1989) (applying "the canon of construction which teaches that legislation of Congress, unless contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States"). *See also United States v. Jordan*, 223 F.3d 676, 693 (7th Cir. 2000) (noting that principles of international law recognize a nation's jurisdiction to prescribe law affecting foreign nationals, but only with respect to conduct occurring in its own territory).

It would have been a "significant innovation" indeed, had the State of Arkansas extended the protection of its civil rights laws beyond its territorial jurisdiction. That it would have done so *sub silentio*—which is what Plaintiff is compelled to argue in order to find legislative authority for his action—is unimaginable. The Arkansas General Assembly was not entirely silent on the matter of

extraterritorial application of the Act, but when it did speak it *foreclosed* the extraterritorial application of the Act. That reference appears in Arkansas Code Annotated § 16-123-102(4)(C), which provides that under the Arkansas Act the term "Employee" does not include "[a]n individual employed outside the State of Arkansas." Thus, in establishing protection against and remedies for discrimination in employment (which is perhaps the most commonly occurring type of discrimination proscribed by the Arkansas Act), the Arkansas General Assembly specifically declined to provide rights under the statute to individuals employed outside the State—even if such individuals may reside (but not work) in Arkansas or work for employers that are based in Arkansas. Plaintiff neither resided in nor conducted any of his independent contracting activities inside Arkansas.

No legislature would have expressly limited the scope of a statute with respect to employment relationships while intending to imply by silence that the statute's scope is vastly broader with respect to independent contractors such as Plaintiff. If the Arkansas Act's employment rights are expressly withheld from individuals employed outside of the State, *a fortiori*, the statute cannot be said to imply the granting of similar rights to an independent distributor living and working in Germany.

As a citizen and resident of the Federal Republic of Germany, Plaintiff has no rights under the United States Constitution, much less the Arkansas Constitution nor the Arkansas Act. The Arkansas Supreme Court has expressly stated that the Arkansas Act provides redress "to citizens of this State," and has stated that it would look to federal law to construe undefined terms in the Arkansas Act. The Federal civil rights acts are limited to United States citizens and noncitizens while in the United States. And Federal constitutional law jurisprudence emphatically states Plaintiff has no right to access the United States judicial system because he is not present within this country's territorial jurisdiction. *Eisentrager*, 339 U.S. at 771. Plaintiff fails the condition precedent to his standing: He suffered no injury while he was a citizen or domiciled or residing within the United States or Arkansas.

## CONCLUSION

This Complaint represents a clear case of forum-shopping: Plaintiff cannot sue in Germany; he cannot sue under the United States laws, so he attempts to use Arkansas law to trump the decision of the

federal government of the Republic of Germany. As a citizen and resident of the Federal Republic of Germany, and on the facts of this case, Plaintiff has no standing under the Arkansas Act. To hold otherwise would be a jurisprudential anomaly and would open the doors of this forum to virtually limitless litigation of foreign claims by foreign claimants. The Arkansas Act does not and cannot extend any protection to the Plaintiff in Germany, and consequently Plaintiff has no standing to maintain this action. This Court should dismiss the Complaint.

                          Respectfully submitted,

                          GILL ELROD RAGON
                          OWEN & SHERMAN, P.A.
                          425 West Capitol Avenue, Suite 3801
                          Little Rock, Arkansas 72201
                          (501) 376-3800

                          By: _____
                             John P. Gill (ABA #62007)
                          Derrick Davidson (ABA # 90214)

OF COUNSEL:
Stephen Fedo
NEAL, GERBER & EISENBERG
2 North LaSalle Street
Chicago, Illinois 60602
(312)269-8000

JOANN UNDERWOOD, P.A.
267 E. Main Street
Batesville, Arkansas 72501
(870)698-3571

## CERTIFICATE OF SERVICE

     I hereby certify that a copy of the foregoing pleading was served by first class mail, postage prepaid, on the attorney-of-record below on this 20th day of August, 2002:

Spencer F. Robinson, Esquire
Ramsay, Bridgforth, Harrelson and Starling, LLP
P.O. Box 8509
Pine Bluff, Arkansas 71611-8509

                                           _____
                                           Derrick Davidson

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

*Exhibits Attached to Original Document in Courts's Case File*