FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 03 2002

JAMES W. McCORMACK, CLK
By: _____
                        DEP CL

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

THOMAS ERNST AKYAR                                              PLAINTIFF

VS.                           CASE NO. 1-02-CV-00060 SWW

LIFE PLUS INTERNATIONAL, INC.                                   DEFENDANT

### FIRST AMENDED COMPLAINT

Comes the Plaintiff, **Thomas Ernst Akyar**, by and through his attorneys **Ramsay, Bridgforth, Harrelson and Starling LLP**, and for his Complaint against the Defendant, **Life Plus International, Inc.**, (hereinafter referred to as "**Life Plus**"), states:

### NATURE OF THE ACTION

1. This is an action for declaratory and injunctive relief, compensatory damages, and exemplary damages arising out of Defendant's unlawful discrimination against Plaintiff on the basis of Plaintiff's religion, and termination of Plaintiff in breach of the parties' contract and implied covenant of good faith and fair dealing.

### JURISDICTION AND VENUE

2. Jurisdiction over this action is conferred by 28 U.S.C. § 1332, in that Plaintiff is a citizen of the Republic of Germany, Defendant is a citizen of the State of Arkansas, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Venue is proper in this district



-2-

under 28 U.S.C. § 1391 (a) and (c), in that Defendant resides in the Eastern District of Arkansas and a substantial part of the events giving rise to the claim occurred here.

## PARTIES

3. Plaintiff Thomas Ernst Akyar is, and at all times relevant to the matters alleged in this Complaint was, an individual citizen of Germany and an adherent to the religion of Scientology.

4. Defendant Life Plus is, and at all times relevant to the matters alleged in this Complaint was, a general partnership with its principal place of business in Batesville, Arkansas.

## FACTS

5. Defendant manufactures and sells vitamins, minerals and nutritional supplements both domestically and internationally.

6. Defendant markets its products using "multilevel" or "network" marketing practices. Pursuant to these practices, a marketing agent for Defendant may earn income in either of two ways: (1) by persuading consumers to purchase Defendant's products; or (2) by recruiting additional marketing agents, and then receiving income from sales arranged by those recruits, as well as from sales arranged by further "downline" agents, *i.e.* agents recruited by the original agent's recruits.

7. Plaintiff began working as a marketing agent for Defendant in 1995.

8. Plaintiff was highly successful at marketing Defendant's products, and at recruiting additional marketing agents for Defendant.

9. In recognition of Plaintiff's superlative marketing performance and Plaintiff's fidelity to the policies and procedures of Life Plus, on or about February 4, 2000, Defendant offered Plaintiff membership in Defendant's "Diamond Bonus" program, a position reserved for high achievers in the Life Plus organization.

-3-

10. On or about February 4, 2000, Plaintiff accepted Defendant's offer and became a Diamond member.

11. Upon Plaintiff's acceptance of membership in Defendant's Diamond program, Plaintiff and Defendant agreed that their working relationship would be governed by terms set forth in a written agreement (hereinafter referred to as the "Diamond Agreement") which was subscribed and executed by Plaintiff and by Tim Nolan, Executive Vice President of Life Plus, on behalf of Defendant.

12. The Diamond Agreement states that Plaintiff's eligibility for the Diamond program reflects not only Plaintiff's superior marketing performance, but also "other qualities…which include loyalty, leadership and ethical behavior."

13. The Diamond Agreement further states that one "way you [*i.e.*, Plaintiff] have demonstrated your leadership capabilities is by abiding by the Policies and Procedures of Life Plus, providing your downline with the latest up-to-date information on these Policies and Procedures and communicating to them the importance of abiding by them."

14. The Diamond Agreement further states that "[b]y abiding by the Policies and Procedures and otherwise not engaging in conduct that is dishonest, illegal, or unfair to those in your upline or downline, you have demonstrated the ethical behavior that represents the tradition and spirit of Life Plus."

15. The Diamond Agreement further states that "you continue to be an independent contractor of Life Plus International."

-4-

16.     The Diamond Agreement further states that "[i]f any terms of . . . other contracts or agreements contradict this one, this one will control, and if any of the terms need to be interpreted, Arkansas law will apply and venue will be in Independence County, Arkansas."

17.     The Diamond Agreement further states that "you understand that if you fail to maintain the exemplary conduct set forth above, fail to meet the sales volume requirements to maintain the Diamond Bonus or fail to comply with the terms and conditions set forth in this Letter Agreement for the Diamond Bonus it will result in immediate termination of your Diamond Bonus and may, in certain circumstances, result in termination of your membership with Life Plus International."

18.     In June 2001, an article appeared in *Network Press*, a German trade journal, describing Plaintiff's successful career with Life Plus. The article identified Plaintiff by name and featured a picture of Plaintiff with the caption "Successful Scientologist." The article did not otherwise mention or refer to the Scientology religion or to Plaintiff's belief in and adherence to Scientology.

19.     In a letter to Plaintiff dated July 2, 2001, Life Plus Europe Ltd. (hereinafter referred to as "Life Plus Europe") terminated or purported to terminate Plaintiff's contractual relationship with Life Plus Europe.

20.     Regarding the matters alleged in this complaint, Life Plus Europe acts and has acted as an agent or alter-ego of Defendant, or acts and has acted in concert with Defendant, such that all acts by Life Plus Europe alleged herein may be attributed to Defendant. Defendant has accepted and adopted the purported termination of Plaintiff by Life Plus Europe, and has acted as if the effect of the July 2 letter was to terminate the contractual relationship between Plaintiff and Defendant.

-5-

21.     The July 2 letter states that "[r]ecently an article was published in *Network Press* with your picture where they emphasized that you are a 'practicing Scientologist.' The reactions of the staff and sales representatives showed that this open confession of membership in the Church of Scientology cannot be accepted by the great majority."

22.     On or about July 3, 2001, Life Plus Europe released information concerning Plaintiff's relationship with Life Plus to a third-party who had inquired whether Life Plus had any connection to the Scientology religion.

23.     Although the third-party inquiry never mentioned or referred to Plaintiff, the July 3 response by Life Plus Europe bore the heading "Re: Thomas Akyar," and was largely devoted to the circumstances surrounding the termination or purported termination of Plaintiff's contract.

24.     The July 3 response by Life Plus Europe states that "Mr. Akyar admitted to our company being an active member of Scientology. We know from leading members of our organization that they are not willing to cooperate with Mr. Akyar because of this. They regard his membership in the Life Plus organization as a real threat to their work."

25.     The July 3 response by Life Plus Europe further states that "while Life Plus respects the right of every person to join any group of his own choice as far as his private area is concerned, Life Plus will not tolerate such a choice endangering the enterprise or the results of the hard work of members of the Life Plus organization. Therefore, a member whose membership in a certain group in his personal life threatens to be damaging to the development of the enterprise's businesses and its marketing partners now or later, due to his activities for Life Plus, cannot be allowed to remain associated with Life Plus."

-6-

26. Through counsel, Plaintiff has urged Defendant to renounce the aforesaid discriminatory policies, practices and conduct and to honor its contractual obligations to Plaintiff, but Defendant has taken no action to remedy Plaintiff's injuries and continues to maintain that Plaintiff's contractual relationship with Defendant has been terminated.

## FIRST CAUSE OF ACTION

### (Discrimination in Contractual Transactions)

27. Plaintiff repeats and realleges each of the allegations set forth in Paragraphs 1 through 26, inclusive, and by this reference incorporates the same as though fully set forth herein.

28. By terminating its contractual relationship with Plaintiff because of Plaintiff's religion, and by stating a policy that membership in an unpopular or undesirable religion is grounds for termination of a contract, Defendant has willfully and intentionally violated the Arkansas Civil Rights Act of 1993, which provides: "The right of an otherwise qualified person to be free from discrimination because of . . . religion . . . is recognized as and declared to be a civil right. This right shall include, but not be limited to: . . . The right to engage in credit and other contractual transactions without discrimination; . . . ." Ark. Stat. Ann. § 16-123-107(a), (a)(4).

29. As a direct and proximate result of Defendant's unlawful policies and conduct, Plaintiff has been, and continues to be, deprived of substantial profits and revenues to which Plaintiff is rightfully entitled.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

30. Plaintiff repeats and realleges each of the allegations set forth in Paragraphs 1 through 26, inclusive, and by this reference incorporates the same as though fully set forth herein.

-7-

31. By terminating its contractual relationship with Plaintiff because of Plaintiff's religion, Defendant has willfully and intentionally breached its contract with Plaintiff.

32. As a direct and proximate result of Defendant's breach, Plaintiff has been, and continues to be, deprived of substantial profits and revenues to which Plaintiff is rightfully entitled.

### THIRD CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

33. Plaintiff repeats and realleges each of the allegations set forth in Paragraphs 1 through 26, inclusive, and by this reference incorporates the same as though fully set forth herein.

34. By terminating its contractual relationship with Plaintiff because of Plaintiff's religion, Defendant has violated the public policy of the State of Arkansas and breached its implied covenant of good faith and fair dealing with Plaintiff.

35. By acting to prevent Plaintiff from continuing to sell Life Plus products and thereby earn commissions as contemplated in the Diamond Agreement, Defendant has breached its implied covenant of good faith and fair dealing with Plaintiff.

36. As a direct and proximate result of Defendant's breaches, Plaintiff has been, and continues to be, deprived of substantial profits and revenues to which Plaintiff is rightfully entitled.

### PRAYER FOR RELIEF

WHEREFORE, it is prayed that Plaintiff have judgment against Defendant as follows:

37. That this Court issue a declaratory judgment finding that the termination of Plaintiff's contractual relationship with Defendant was discriminatory and unlawful; in breach of

-8-

contract; in violation of the public policy of the State of Arkansas; and in breach of the implied covenant of good faith and fair dealing between Plaintiff and Defendant.

    38.    That, pursuant to Ark. Stat. Ann. § 16-123-107(b) and the Court's inherent powers, this Court issue an injunction requiring Defendant to reinstate its contractual relationship with Plaintiff on the same terms applicable at the time immediately prior to the unlawful termination, except that any seniority or benefits shall be granted to Plaintiff exactly as if Plaintiff had never been terminated;

    39.    That, pursuant to Ark. Stat. Ann. § 16-123-107(b) and the Court's inherent powers, this Court issue an injunction forbidding Defendant from applying its policy that membership in certain religious groups shall be grounds for termination of a contract;

    40.    That, pursuant to Ark. Stat. Ann. § 16-123-107(b) and the Court's inherent powers, this Court award compensatory damages to Plaintiff in an amount to be determined at trial, together with interest thereon at the prevailing rate or legal rate, whichever is greater, calculated from the date at which the payments for which compensation is made first became due and payable to Plaintiff;

    41.    That, pursuant to Ark. Stat. Ann. § 16-123-107(b) and the Court's inherent powers, this Court award exemplary damages to Plaintiff in an amount to be determined at trial;

    42.    That, pursuant to Ark. Stat. Ann. § 16-123-107(b) and the Court's inherent powers, this Court award to Plaintiff all of Plaintiff's costs and attorneys' fees associated with bringing this action;

    43.    That this Court award all other and further relief that it may deem just and appropriate under the circumstances.

-9-

Respectfully submitted,

**RAMSAY, BRIDGFORTH, HARRELSON AND STARLING LLP**
P. O. Box 8509
Pine Bluff, AR  71611-8509
(870) 535-9000 - phone
(870) 535-8544 - fax
Attorneys for Plaintiff

By _____/s/ Spencer F. Robinson_____
      Spencer F. Robinson   77111

## CERTIFICATE OF SERVICE

I, Spencer F. Robinson, attorney for the Plaintiff herein, do hereby certify that I have served a true and correct copy of the foregoing on the following individuals by ordinary mail, postage prepaid, this _____2_____ day of October, 2002:

Mr. John P. Gill
Gill, Elrod, Ragon, Owen & Sherman, P.A.
425 West Capitol Avenue, Suite 3801
Little Rock, AR  72201

Mr. Stephen Fedo
Neal, Gerber & Eisenberg
2 North LaSalle Street
Chicago, IL  60602

Ms. Joann Underwood, P.A.
267 E. Main Street
Batesville, AR  72501

_____/s/ Spencer F. Robinson_____
      Spencer F. Robinson   77111