FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 03 2002

JAMES W. McCORMACK, CLERK
By: _____
               DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**THOMAS ERNST AKYAR**                                      PLAINTIFF

VS.                    CASE NO. 1-02-CV-00060 SWW

**LIFE PLUS INTERNATIONAL, INC.**                           DEFENDANT

## BRIEF IN OPPOSITION TO MOTION TO DISMISS

### INTRODUCTION

Pursuant to Fed. R. Civ. P. 12(b)(1), Defendant moves to dismiss this action, brought under the Arkansas Civil Rights Act of 1993, Ark. Code Ann. §§ 16-123-101 *et seq.*, and Arkansas common law of contracts, for want of subject-matter jurisdiction. Yet Defendant never contests the facts, clearly set forth in the Complaint, that establish the Court's subject matter jurisdiction -- *viz.*, that the action is between "citizens of a State and citizens or subjects of a foreign state," and that the amount "in controversy exceeds . . . $75,000, exclusive of interests and costs." 28 U.S.C. § 1132(a), (a)(2); Complaint ¶2. Rather, Defendant argues that religious discrimination against out-of-state plaintiffs is permitted by Arkansas law. Because this argument has no relevance to the Court's jurisdiction to adjudicate this matter, Defendant's Rule 12(b)(1) motion to dismiss must be denied.

### STATEMENT OF THE CASE

Plaintiff Thomas Ernst Akyar is an individual citizen of Germany and an adherent to the religion of Scientology. Defendant Life Plus International is an Arkansas general partnership that sells vitamins and related products. Defendant markets its products using "multilevel" or



-2-

"network" marketing practices. Pursuant to these practices, a marketing agent for Defendant may earn income in either of two ways: (1) by persuading consumers to purchase Defendant's products; or (2) by recruiting additional marketing agents, and then receiving a portion of the commissions earned by those recruits, as well as a portion of the commissions earned by further "downline" agents, *i.e.* agents recruited by the original agent's recruits.

Plaintiff began working as a marketing agent for Defendant in 1995. Plaintiff was highly successful at marketing Defendant's products, and at recruiting additional marketing agents for Defendant. In recognition of Plaintiff's superlative performance and fidelity to the policies and procedures of Life Plus, Plaintiff was offered membership in Defendant's "Diamond Bonus" program, a position reserved for high achievers in the Life Plus organization. On or about February 4, 2000, Plaintiff and Defendant executed a written "Diamond Bonus" agreement governing the terms of their working relationship.

In June 2001, an article appeared in *Network Press*, a German trade journal, describing Plaintiff's successful career with Life Plus. The article identified Plaintiff by name and featured a picture of Plaintiff with the caption "Successful Scientologist." The article did not otherwise mention or refer to the Scientology religion or to Plaintiff's belief in and adherence to Scientology. Shortly thereafter, Plaintiff received a letter dated July 2, 2001, from Life Plus Europe, Ltd.[1] observing that Plaintiff had been publicly identified as a "practicing Scientologist," and stating that "membership in the Church of Scientology cannot be accepted by the great majority." On this basis, the July 2 letter went on to state that Plaintiff's contract with Life Plus

---

[1] Plaintiff alleges that Life Plus Europe Ltd. is an agent or alter-ego of Defendant. *See* First Amended Complaint ¶20. Defendant denies the allegation, but concedes that Life Plus Europe and Defendant may be regarded as "one and the same entity" for purposes of the pending motion. *See* D. Mem. At 5, 3 n.2.

-3-

Europe is terminated. Defendant has acted and continues to act as if the July 2 letter terminated Plaintiff's contractual relationship with Defendant.

On July 1, 2002, Plaintiff filed this diversity action, alleging that Plaintiff's termination because of his religion was in violation of the Arkansas Civil Rights Act of 1993, Ark. Code Ann. §§ 16-123-101 *et seq.* Along with this Opposition, Plaintiff files its First Amended Complaint pursuant to Fed. R. Civ. P. 15(a), adding causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing.

## ARGUMENT

### I. THE COURT HAS SUBJECT MATTER JURISDICTION OVER THIS CONTROVERSY BECAUSE THE PARTIES ARE COMPLETELY DIVERSE AND THE AMOUNT IN CONTROVERSY EXCEEDS $75,000 EXCLUSIVE OF INTEREST AND COSTS

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1132(a), (a)(2). Plaintiff has alleged each of the necessary elements. *See* First Amended Complaint ¶2. Defendant does not dispute them. The Court need look no further to dispose of the pending motion. Subject-matter jurisdiction exists because this is an actual controversy involving more than $75,000 in which the parties are completely diverse.

The substance of Defendant's jurisdictional challenge is that Arkansas law permits discrimination on the basis of religion where the injured party is not a citizen of Arkansas. On Defendant's view, then, the Court's jurisdiction to adjudicate this matter turns on an interpretation of the Arkansas Civil Rights Act. Even supposing Defendant's construction of

-4-

Arkansas law were correct, a recent unanimous decision from the United States Supreme Court decisively rejects Defendant's jurisdictional theory:

> It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case. As we have said, the district court has jurisdiction if the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws . . . are given one construction and will be defeated if they are given another, unless the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.

*Verizon Maryland Inc. v. Pub. Serv. Comm.*, 122 S. Ct. 1753, 1758-59 (2002) (internal quotation marks and citations omitted); *see also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure § 1350*, p. 196 & n.8 (2d ed. 1990).

Defendant has not alleged, and no evidence suggests, that Plaintiff's claim is frivolous or made solely to obtain jurisdiction. Defendant simply contends that Arkansas law should be construed to deny Plaintiff relief. Defendant's preferred interpretation of the Arkansas civil rights statute has no bearing on the Court's power to hear this controversy, so Defendant's motion to dismiss for want of subject matter jurisdiction should be denied.

## II. PLAINTIFF HAS ADEQUATELY STATED A CLAIM FOR UNLAWFUL DISCRIMINATION IN CONTRACTUAL TRANSACTIONS UNDER ARKANSAS LAW

Defendant's motion also fails if regarded as brought under Fed. R. Civ. P. 12(b)(6), arguing that the First Cause of Action in Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted.

The Arkansas Civil Rights Act of 1993 makes it unlawful to discriminate against "an otherwise qualified person" on the basis of religion when making contractual transactions. Ark. Code Ann. § 16-123-107(a), (a)(4). Plaintiff has alleged, and for purposes of this motion the

-5-

Court must assume, that Plaintiff and Defendant had a contractual relationship which Defendant terminated on the basis of Plaintiff's religion. The only question, then, is whether Plaintiff is an otherwise qualified person.

As Defendant concedes, "[t]he Arkansas Act . . . and Arkansas cases do not define 'person' or 'otherwise qualified person' . . . ." D. Mem. at 5-6. There is, in other words, no authority stating that the term "person" should be read as if "citizen" were there in its place, nor indeed that "person" should have any meaning other than the ordinary sense of that term.[2] "In the absence of an indication to the contrary, words in a statute are assumed to bear their ordinary, contemporary, common meaning." *National Railroad Passenger Corp. v. Morgan*, 122 S. Ct. 2061, 2070 (2002).

With no authority for the proposition that Plaintiff is not a "person" within the meaning of the Arkansas Civil Rights Act, Defendant relies on the definition of a different statutory term, one not at issue in this litigation. Because the Act expressly defines "employee" to exclude "[a]n individual employed outside the State of Arkansas," Defendant argues, the legislature must have similarly intended to define "person" to mean only "citizen." *See* D. Mem. at 7-8; Ark. Code Ann. § 16-123-102(4)(C). This is a specious method of statutory interpretation. In truth, the statute's explicit limitation of one type of civil rights action to Arkansas plaintiffs shows clearly

---

[2] To support its contention that "person" should be interpreted to mean "Arkansas citizen," Defendant points to *Flentje v. First Nat. Bank of Wynne*, 11 S.W.3d 531 (Ark. 2000), in which the Arkansas Supreme Court observed in dicta that the statute "provides citizens of this state legal redress for civil rights violations." *Id.* at 536. Although the decision is not explicit, it appears that both parties in *Flentje* were Arkansas citizens, so the Court had no occasion to rule on whether a non-citizen is a "person" within the meaning of the statute. Even if it had so ruled, *Flentje* would be inapposite here. Unlike the instant case concerning discrimination in contractual transactions, *Flentje* involved a question of employment discrimination, a class of civil rights actions the Arkansas legislature has *expressly* made available only to plaintiffs who are Arkansas citizens. *See* Ark. Code Ann. § 16-123-102(4)(C). No analogous provision bars claims of contractual discrimination brought by foreign plaintiffs.

-6-

that the legislature did not intend that the remaining civil rights claims should be subject to the same limitation.

"Where [a legislature] includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislature] acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983). Here, the legislature has clearly demonstrated that where it intends that a term in the Arkansas Civil Rights Act should be interpreted differently from the term's ordinary meaning, the Act will expressly so indicate. Because the Act contains no definition of "person," the proper conclusion is that the term is used in its ordinary sense.

Resisting the plain language of the statute, Defendant compares the Arkansas Act to federal civil rights laws that limit their application to United States citizens or persons within the United States. The comparison reveals nothing about the proper interpretation of "person," however, for the simple reason that, unlike the Arkansas statute, the federal civil rights laws *expressly* provide that only United States citizens and persons within the United States are protected. *See* 42 U.S.C. § 1981 ("All persons within the jurisdiction of the United States"); 42 U.S.C. § 1983 ("any citizen of the United States or other person within the jurisdiction thereof "); 42 U.S.C. § 2000e(f) ("employee" in Title VII "includes an individual who is a citizen of the United States" employed abroad); 29 U.S.C. § 630(f) ("employee" in A.D.E.A. "includes any individual who is a citizen of the United States" employed abroad). Although the Arkansas civil rights statute was enacted subsequent to all of the aforementioned federal laws, the Arkansas legislature elected not to include a similarly restrictive definition of "person."

-7-

Finally, Defendant relies on cases concerning the reach of the Fifth and Fourteenth Amendments to the United States Constitution, "from which," according to Defendant, "all civil rights law flows." D. Mem. at 6. While perhaps relevant to the compass of federal civil rights laws, those constitutional provisions place no restriction on the power of the State of Arkansas to prohibit religious discrimination. State law protection of such a fundamental civil and human right does not flow from the federal Constitution.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendant's motion to dismiss.

Respectfully submitted,

**RAMSAY, BRIDGFORTH, HARRELSON AND STARLING LLP**
P. O. Box 8509
Pine Bluff, AR  71611-8509
(870) 535-9000 - phone
(870) 535-8544 - fax
Attorneys for Plaintiff

By_____
Spencer F. Robinson   77111

-8-

## CERTIFICATE OF SERVICE

    I, Spencer F. Robinson, attorney for the Plaintiff herein, do hereby certify that I have served a true and correct copy of the foregoing on the following individuals by ordinary mail, postage prepaid, this ____2____ day of October, 2002:

    Mr. John P. Gill
    Gill, Elrod, Ragon, Owen & Sherman, P.A.
    425 West Capitol Avenue, Suite 3801
    Little Rock, AR 72201

    Mr. Stephen Fedo
    Neal, Gerber & Eisenberg
    2 North LaSalle Street
    Chicago, IL 60602

    Ms. Joann Underwood, P.A.
    267 E. Main Street
    Batesville, AR 72501

_____
Spencer F. Robinson    77111