IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

THOMAS ERNST AKYAR                                        PLAINTIFF

VS.                    CASE NO. 1-02-CV-00060 SWW

LIFE PLUS INTERNATIONAL, INC.                            DEFENDANT

## BRIEF IN SUPPORT OF MOTION TO DISMISS

### PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiff premises his entire lawsuit on his unfounded legal conclusion that Life Plus Europe ("LP Europe"), a British company that conducts its business in Europe, is the "agent or alter-ego" of Life Plus International ("Life Plus"), an Arkansas business. Plaintiff offers no facts to support this legal conclusion, but with it erroneously attempts to bootstrap himself to Arkansas law, suing the Arkansas business, but not the British company that acted against him.

Plaintiff is a German citizen and resident. He contracted in Germany with LP Europe. After LP Europe terminated that contract, Plaintiff filed this action against only Life Plus. Plaintiff originally complained a violation of the Arkansas Civil Rights Act occurred when a British company terminated a contract in Germany with a German citizen. In the First Amended Complaint Plaintiff alleges the same act of discrimination, plus he posits a breach of contract and a breach of the implied duty of good faith and fair dealing.

Life Plus moved to dismiss the original complaint because Plaintiff did not present this Court with a justiciable case or controversy as required by Article III of the

United States Constitution. As a German citizen, Plaintiff is not afforded any rights of action under the Arkansas Civil Rights Act for conduct or injuries occurring in Germany; thus Plaintiff has no cause of action under that statute and cannot present this Court with a case or controversy to adjudicate under Article III of the United States Constitution. The First Amended Complaint changes no facts in this regard, and Plaintiff still cannot present a justiciable issue and thus still lacks standing before this Court. This Court must dismiss his putative action under Rule 12(b)(1) of the Federal rules of Civil Procedure.

Further, all three causes of action of the First Amended Complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff balances all three causes of actions on the knife's edge of his legal conclusion that LP Europe is the agent or alter-ego of Life Plus, but Plaintiff failed to allege a single fact to support that legal conclusion. Legal conclusions do not meet Plaintiff's pleading burden under Rule 8. In addition, Plaintiff's theories underlying his new second and third causes of action fail to state causes of action and should be dismissed pursuant to Rule 12(b)(6). Life Plus has renewed its Rule 12(b)(1) motion to dismiss as to Plaintiff's first cause of action, and also seeks dismissal of the First Amended Complaint pursuant to Rule 12(b)(6). Life Plus International also has moved to dismiss on the alternative grounds of *forum non conveniens*.

Plaintiff "is, and at all times relevant to the matters alleged in [the] Complaint was, an individual citizen of Germany." First Amd. Complt., ¶ 3. Plaintiff contracted with LP Europe in 1995. First Amd. Complt., ¶ 7. Plaintiff contracted with Life Plus in February 2000. First Amd. Complt., ¶ 10. At all times relevant hereto, Life Plus developed and sold Life Plus® branded vitamins and related products (collectively, "Life

Plus® Products") and owned the Life Plus® Product trademarks and all other intellectual property associated with those products. First Amd. Complt., ¶ 5; Affidavit of Robert E. Christian, at ¶ 2. (The Affidavit is attached to the Motion to Dismiss as Exhibit 1 and is hereafter cited as "Ex. 1, ¶ __." The Affidavit is submitted only with respect to the Rule 12(b)(1) motion to dismiss Plaintiff's First Cause of Action, and the motion to dismiss for *forum non conveniens*.)

LP Europe markets Life Plus® Products in Europe under a license. Ex 1, ¶ 3. Neither Life Plus nor LP Europe (a regional distributor) is owned or controlled by the other. *Id.* LP Europe has not been named as a party to this action. LP Europe handles the distribution of Life Plus® Products in Europe by contracting with independent contractors (Ex. 1, ¶ 3) who in turn may recruit additional "downline" contractors. First Amended Complaint, ¶ 6.

Plaintiff contracted with LP Europe in 1995. First Amd. Complt., ¶ 7. Plaintiff's authority to sell Life Plus® Products depended on his contract with LP Europe (Ex. 1, ¶ 4), because LP Europe had the exclusive right to sell Life Plus® Products in Europe. Ex. 1, ¶ 3. As the owner of Life Plus® Product trademarks, Life Plus offered membership in its Diamond Bonus program as an incentive to contractors selling Life Plus® Products. Ex. 1, ¶ 5. Plaintiff became a Diamond Bonus member in February 2000. First Amd. Complt., ¶ 10. Diamond Bonus membership rewards productive contractors by allowing them to earn additional commissions on high sales volumes. Ex. 1, ¶ 5. Diamond Bonus membership does not supplant a contractor's original contractual relationship with or obligation to his or her regional distributor. For example, a European member who attains Diamond Bonus membership maintains his or her primary relationship with LP

Europe. *Id.* The continuation of the primary relationship is one of the conditions for a member's continued participation in the Diamond Bonus program. *Id.* Indeed, in the absence of a primary relationship, a contractor is not authorized to sell Life Plus® Products at all, let alone a sufficient volume to earn Diamond Bonus commissions. *Id.*

By letter dated July 2, 2001, LP Europe terminated its relationship with Plaintiff. First Amd. Complt., ¶ 19. Plaintiff alleges that Life Plus "has acted as if the effect of the July 2 letter" was to terminate Plaintiff's Diamond Bonus membership. First Amd. Complt., ¶ 20. But, Plaintiff failed to allege any action taken by Life Plus. He does not allege any communication from Life Plus terminating his Diamond Bonus membership; he does not allege Life Plus has taken any action whatsoever. Neither does he allege that he is able to meet the performance requirements of the Diamond Bonus program absent a primary contractual relationship with LP Europe. Plaintiff in short argues that LP Europe had contracted with him, and, because that contract no longer exists, Life Plus should be liable to him.

### STANDARD FOR DETERMINING
### LIFE PLUS'S 12(b)(1) MOTION TO DISMISS

Life Plus moves to dismiss the First Cause of Action in the First Amended Complaint because this Court lacks subject matter jurisdiction to adjudicate that claim. The allegations appearing on the face of the First Amended Complaint do not limit the Court's inquiry in deciding Life Plus's motion under Rule 12(b)(1), and the Court may consider matters outside the pleadings in making its decision. *Osborne v. United States*, 918 F.2d 724, 728-29 (8th Cir. 1990). The Court must in all events satisfy itself that it has subject matter jurisdiction. "[I]f a plaintiff lacks standing, the district court has no subject matter jurisdiction. Therefore, a standing argument implicates Rule 12(b)(1)."

*Faibisch v. Univ. of Minnesota*, 2002 WL 31094786, *8, 304 F.3d 797 (8th Cir. 2002);

*see also U.S. Steel Co. v. Citizens for a Better Environment*, 523 U.S. 89, 102-03 (1998)

(finding plaintiff lacked standing and therefore had not presented an Article III case or

controversy).

Under Rule 12(b)(1) the Court is not constrained to read the allegations in the

light most favorable to the pleader, as under Rule 12(b)(6), or to deny the motion where

there may be a triable question of fact, as under Rule 56.  The Court may decide a Rule

12(b)(1) motion on disputed factual issues.  *Id.* at 729-30, citing *Mortensen v. First Fed.*

*Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977), and *Crawford v. United States*, 796

F.2d 924, 928 (7th Cir. 1986).

## STANDARD FOR DETERMINING
## LIFE PLUS'S 12(b)(6) MOTION TO DISMISS

Life Plus moves to dismiss the attempted claims contained in the First Amended

Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because the

First Amended Complaint fails to state facts upon which this Court may grant Plaintiff

relief from Life Plus for religious discrimination under the Arkansas Civil Rights Act,

breach of contract, or breach of the implied duty of good faith and fair dealing.

"In considering a motion to dismiss, courts accept the plaintiff's factual

allegations as true, but reject conclusory allegations of law and unwarranted inferences."

*Silver v. H. & R.. Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997).  "To avoid dismissal, a

complaint must allege facts sufficient to state a claim as a matter of law and not merely

legal conclusions."  *Young v. City of St. Charles, MO*, 244 F.3d 623 (8th Cir. 2001).  And

because this action is a diversity action, under *Erie* principles, this Court must utilize

Arkansas law to determine whether Plaintiff has stated facts supporting his claims. *Fenton v. Freedman*, 748 F.2d 1358 (9th Cir. 1984).

## STANDARD FOR DETERMINING LIFE PLUS'S MOTION TO DISMISS FOR FORUM NON CONVENIENS

Alternatively, Life Plus moves to dismiss this case on grounds of *forum non conveniens* because all of the relevant considerations concerning forum selection in this case favor the courts in the Federal Republic of Germany, and none of those considerations support the selection of Arkansas. A court may grant a *forum non conveniens* motion if, in its discretion, it determines that "the convenience of the parties and the ends of justice" will be served if the action proceeds in a different forum. *Koster v. Lumbermans Mutual Casualty Co.*, 330 U.S. 518, 527 (1947). The criteria for dismissal are met if an adequate forum exists elsewhere, and if both private and public interests favor the alternative forum over the original forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249-51 (1981).

## ARGUMENT

This Court lacks power to act under Article III of the Constitution to adjudicate Plaintiff's First Cause of Action based on the Arkansas Civil Rights Act. This Court must dismiss the First Cause of Action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Further, Plaintiff failed to allege facts sufficient under Arkansas law to support the any of his claims. Therefore, even if Plaintiff has standing to assert his First Cause of Action, this Court must dismiss the First Amended Complaint in its entirety for failure to state facts upon which relief can be granted pursuant to Rule 12(b)(6). Finally, even if Plaintiff has standing and alleged sufficient facts to state a claim, the First

Amended Complaint must nevertheless be dismissed because a court in the Federal Republic of Germany is the proper forum to hear Plaintiff's dispute.

## THE FIRST CAUSE OF ACTION PRESENTS THIS COURT WITH NO CASE OR CONTROVERSY TO ADJUDICATE UNDER ARTICLE III OF THE CONSTITUTION.

Plaintiff, a citizen and resident of the Federal Republic of Germany, seeks redress under the Arkansas Civil Rights Act of 1993, Ark. Code Ann. §§ 16-123-101, *et seq.* (the "Arkansas Act") for alleged discrimination that occurred in Germany in a German contractual relationship. Plaintiff alleges he was discriminated against because he professes Scientology as his religion. German case law holds, however, that Scientology does not enjoy the status of a religion under the Federal Republic of Germany's Basic Constitutional Law. *See* BAGE 5 AZB 21/94 (decision of Mar. 23, 1995).[1] Plaintiff accordingly cannot maintain an action under German law based on alleged religious discrimination against him, and has instead turned to the United States' judicial system and to the Arkansas Act in search of rights and remedies that are unavailable where he lives and worked and where the alleged injury giving rise to this litigation is alleged to have occurred.

In pursuing his claim before this Court, Plaintiff seeks to extend the reach of the Arkansas Act to individuals the world over who believe themselves aggrieved by discrimination, regardless of whether those individuals and the alleged discriminatory acts have any meaningful nexus with the State of Arkansas. Nothing in the Arkansas Act even remotely suggests it is intended to be given extraterritorial effect or should be applied to controversies arising in foreign jurisdictions and involving aggrieved parties who were neither citizens of nor visitors in the State of Arkansas when they were injured.

---

[1] A copy of the referenced case, in English translation, is attached hereto.

I:\JPG\LIFEPLUS\AKYAR\Pleadings\Brief in Support of Motion To Dismiss 1st Am Compl - Final.doc

It would be frivolous to contend that such a broad application was intended, but never expressly stated.

The standing requirement mandates that a plaintiff present this Court with a case or controversy, which, under Article III of the United States Constitution, is a prerequisite to this Court's power to adjudicate disputes. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Because standing . . . pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it] is properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)"); *AFGE, Local 2119 v. Cohen*, 171 F.3d 460, 465 (7th Cir. 1999). *See also Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1020 (8th Cir. 2000); *Kulinski v. Medtronic Bio-Medicus, Inc.*, 21 F.3d 254, 256 (8th Cir. 1999); *Starr v. Mandanici*, 152 F.3d 746, 747-49 (8th Cir. 1998). Plaintiff has not satisfied these requirements.

### Plaintiff Lacks Standing to Sue Under the Arkansas Act Because He is A German Citizen and His Claim Arose in Germany.

Plaintiff seeks to invoke the power of this Court to protect his perceived rights under the Arkansas Act, but the Arkansas Act does not create rights for individuals who neither reside in Arkansas nor have suffered injuries in Arkansas. Plaintiff presents no authority that the Arkansas Act extends any protection to citizens and residents of the Republic of Germany while they are in that foreign country. The Arkansas Act affords no remedy for allegedly discriminatory conduct occurring wholly in foreign countries. Absent a remedy applicable to him on the facts of his case, Plaintiff lacks standing. *See Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 45-46 (1976); *U.S. Steel v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998). "[T]he doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). Absent standing, there is no case or

controversy to adjudicate, and hence no jurisdiction under Article III of the United States Constitution.

Plaintiff alleges no facts that support standing under the Arkansas Act, and there is no authority that the Arkansas Act extends to grievances of the citizens and residents of Germany arising from contractual relationships in that foreign country. The Arkansas Supreme Court has stated that the Arkansas Act "provides *citizens of this state* legal redress for civil rights violations of state constitutional or statutory provisions, hate offenses, and discrimination offenses." *Flentje v. First Nat. Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000) (emphasis added). The Arkansas Supreme Court has also held that "ordinarily [Arkansas] statutes have no effect except within [Arkansas]'s own territorial limits." *Widmer v. Wood*, 243 Ark. 457, 459, 420 S.W.2d 828, 830 (1967) (citing *Meekings v. Meekings*, 169 Ark. 265, 275 S.W. 337 (1925)).

The holding in *Widmer* is virtually identical to the presumption applied by the United States Supreme Court in its review of federal statutes. As the Court stated in *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 440 (1989), there is a well-established "canon of construction which teaches that legislation of Congress, unless contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States."

The presumption against the extraterritorial effect of statutes was forcefully applied in *E.E.O.C. v. Arabian American Oil Co.*, 499 U.S. 244 (1991), where the Supreme Court considered the Title VII claim of a United States citizen who was working in Saudi Arabia when he was discharged by his employer, a Delaware

corporation. The Court affirmed the decisions of the courts below dismissing the Title

VII claim for lack of subject matter jurisdiction. In so doing, the Court stated:

> It is a longstanding principle of American law "that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." . . . This "canon of construction . . . is a valid approach whereby unexpressed congressional intent may be ascertained." It serves to protect against unintended clashes between our laws and those of other nations which could result in international discord. . . .We assume that Congress legislates against the backdrop of the presumption against extraterritoriality. Therefore, unless there is "the affirmative intention of the Congress clearly expressed," . . . we must presume it "is primarily concerned with domestic conditions."

*Arabian American Oil*, 499 U.S. at 248 (citations omitted).[2]

The presumption against extraterritorial application has been applied in

constitutional, as well as statutory cases. *Johnson v. Eisentrager*, 339 U.S. 763 (1950);

*Kwong Hai Chew v. Colding*, 344 U.S. 590 (1953); and *Plyer v. Doe*, 457 U.S. 202

(1982). *Eisentrager* involved a habeas corpus appeal prosecuted by twenty-one German

nationals imprisoned in Germany after World War II. The Court held that the German

citizens did not have standing to seek relief in the United States judicial system because

the United States Constitution and laws enacted thereunder did not apply to them. *Id.* at

781. The Court reasoned that, "in extending constitutional protections beyond the

citizenry, the Court has been at pains to point out that it was the alien's *presence within

its territorial jurisdiction* that gave the Judiciary power to act." *Id.* at 771 (emphasis

added). The Court then stated, "We have pointed out that the privilege of litigation has

been extended to aliens, whether friendly or enemy, only because permitting their

presence in the country implied protection." *Id.* at 778.

---

[2]     Eight months after the decision was announced in *Arabian American Oil*, Congress amended Title VII to extend its coverage to citizens of the United States who are employed in foreign countries by employers who are otherwise reached by the statute. 42 U.S.C. §2000e(f), as amended by Pub.L. 102-166, § 109(a).

The Court also notably commented that the application of United States law beyond its borders would be an extraordinary event:

> Extraterritorial application of organic law would have been so significant an innovation in the practice of governments that, if intended or apprehended, it could scarcely have failed to excite contemporary comment. . . . No decision of this Court supports such a view.

*Eisentrager*, 339 U.S. at 783. *See also United States v. Jordan*, 223 F.3d 676, 693 (7th Cir. 2000) (noting that principles of international law recognize a nation's jurisdiction to prescribe law affecting foreign nationals, but only with respect to conduct occurring in its own territory).

It would have been a "significant innovation" indeed, had the State of Arkansas taken it upon itself to exceed the normal reach even of the United States government and extend the benefits and obligations of the Arkansas Act beyond Arkansas' territorial jurisdiction and to those who are strangers to its soil. That it would have done so *sub silentio*—which is what Plaintiff is compelled to argue in order to find legislative authority for his action—is unimaginable. The Arkansas General Assembly was not entirely silent on the matter of extraterritorial application of the Act, but when it did speak it *foreclosed* the extraterritorial application of the Act. That reference appears in Arkansas Code Annotated § 16-123-102(4)(C), which provides that under the Arkansas Act the term "Employee" does not include "[a]n individual employed outside the State of Arkansas." Thus, in establishing protection against and remedies for discrimination in employment (which is perhaps the most commonly occurring type of discrimination proscribed by the Arkansas Act), the Arkansas General Assembly specifically declined to provide rights under the statute to individuals employed outside the State—even if such

individuals may reside (but not work) in Arkansas or work for employers that are based in Arkansas.

No legislature would have expressly limited the scope of a statute with respect to employment relationships while intending to imply by silence that the statute's scope is vastly broader with respect to independent contractors such as Plaintiff. If the Arkansas Act's employment rights are expressly withheld from individuals employed outside of the State, *a fortiori*, the statute cannot be said to imply the granting of similar rights to an independent distributor living and working in Germany. [3]

As Plaintiff admits in his First Amended Complaint, the contractual relationship at issue was his relationship with LP Europe—not Life Plus.    That contractual relationship was made, performed and terminated in Germany, entirely outside of the State of Arkansas.  Plaintiff's alleged injury happened in Germany.  There is simply no material connection between Plaintiff's claim for unlawful religious discrimination and the State of Arkansas, upon whose law Plaintiff purports to rely.

Because Plaintiff recognizes his tenuous connection with Arkansas, he attempts to bolster his First Amended Complaint with multiple references to his one connection with Arkansas: the Diamond Bonus program.    While the Diamond Bonus program is connected with Arkansas, it is unrelated to the discrimination Plaintiff claims to have suffered.  As Plaintiff admits, he no longer participates in the Diamond Bonus program

---

[3]        It could be argued that a *positive* inference may be drawn from the express limitation with respect to employment—i.e., that the inclusion of the express limitation in one section of the Arkansas Act implies legislative intent that no such limitation be applicable as to any other section.  That argument, which would run counter to the presumption against extraterritorial application of statutes, would be similar to the construction of Title VII proffered by the plaintiff in *Arabian American Oil* and soundly rejected by the Supreme Court.  499 U.S. at 254-55.  The Court stated: "Without clearer evidence of congressional intent [as to extraterritorial effect] . . . we are unwilling to ascribe to that body a policy which would raise difficult issues of international law . . . ." *Id.* at 255.

because he no longer sells Life Plus® Products, not because he professes Scientology or because Life Plus terminated his participation in the Diamond Bonus Program.

Plaintiff has not alleged a meaningful nexus of his claim and the State of Arkansas. If he has suffered discrimination, it was in his own nation. That is no basis for relief under the Arkansas Act and no basis for standing in this Court. Absent a case or controversy between the parties, this Court lacks subject matter jurisdiction and must dismiss Plaintiff's First Cause of Action.

### THE FIRST AMENDED COMPLAINT FAILS TO ALLEGE FACTS UPON WHICH RELIEF CAN BE GRANTED AND, FURTHER, FAILS TO STATE CONTRACT CLAIMS THAT ARE COGNIZABLE UNDER GERMAN LAW.

The First Amended Complaint does not allege a single fact in support of Plaintiff's bald legal conclusion that LP Europe acted as the "agent or alter-ego" of Life Plus. Because Plaintiff's "alter-ego" assertion is the only thread connecting Life Plus to the matters complained of, Plaintiff cannot state any cause of action against Life Plus without pleading some factual basis for his "alter-ego" conclusion. Because he has failed to do so, the First Amended Complaint must be dismissed in its entirety, pursuant to Rule 12(b)(6).

Plaintiff's common-law contract claims (the Second and Third Causes of Action in the First Amended Complaint) are legally insufficient for the further reason that, under German law, Scientology is not recognized as a religion, and hence no contract claim based on allegations of religious discrimination can arise where the claimant's "religion" is Scientology. On this additional and alternative ground, Plaintiff's Second and Third Causes of Action should be dismissed, pursuant to Rule 12(b)(6).

**This Court Must Dismiss the First Amended Complaint Because It Contains No Facts to Support Plaintiff's Legal Conclusion that Life Plus Europe is the Agent or Alter-Ego of Life Plus International.**

Although this Court must accept as true the facts Plaintiff alleges and give Plaintiff the benefit of the inferences that may reasonably be drawn from by those facts, this Court need not accept as true the bald, unsupported legal conclusion asserted by Plaintiff that LP Europe is the "agent or alter-ego" of Life Plus International. Plaintiff has offered only a single sentence related to the connection between LP Europe and Life Plus, stating, "Life Plus Europe acts and has acted as an agent or alter-ego of Defendant, or acts and has acted in concert with Defendant, such that all acts by Life Plus Europe alleged herein may be attributed to Defendant.". First Amended Complaint, ¶ 20. Plaintiff thus concludes that LP Europe is either the agent of Life Plus or the alter-ego of Life Plus, but has not alleged a single fact to support either conclusion.

As a threshold matter, we note that the questions of agency or alter-ego in this case present the Court with a choice-of-law issue. Federal courts, in deciding choice-of-law questions, apply the choice-of-law rules of the state in which they sit. *Heating & Air Specialists, Inc. v. Jones*, 180 F.3d 923, 928 (8th Cir. 1999). In determining whether LP Europe was the agent or alter-ego of Life Plus, Arkansas courts would look to "the local law of the state which, with respect to the particular issue, has the most significant relationship" to the parties and the action undertaken by the agent or alter-ego. Restatement (Second) of Conflict of Laws § 292. "The most significant relationship" in this case is, of course, with Germany, where Plaintiff contracted with LP Europe and where LP Europe terminated Plaintiff's contract. The outcome of the choice-of-law analysis is not critical, however, because the respective laws of Germany and Arkansas

are substantially similar with respect to agency and alter-ego.  Where the potentially applicable laws do not materially differ, courts may rely upon the law of the forum state or may consider the laws of both states.  *See Nursing Home Consultants, Inc. v. Quantum Health Services, Inc.*, 926 F.Supp. 835, 847-48 (W.D. Ark. 1996).

Under Arkansas law, Plaintiff bears the burden of proving an agency relationship, and to do so Plaintiff must allege two factual elements to support a conclusion of an agency relationship:  "(1) that an agent have the authority to act for the principal and (2) that the agent act on the principal's behalf and be subject to the principal's control."  *Newberry v. Scruggs*, 336 Ark. 570,  575, 986 S.W.2d 853, 855-56 (1999).  Indeed the Arkansas Supreme Court has stated:

> The relation of agency is created as the result of conduct by two parties manifesting that one of them is willing for the other to act for him subject to his control, and that the other consents so to act.   The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on the principal's behalf and subject to his control.

*Evans v. White*, 284 Ark. 376, 378, 682 S.W.2d 733, 734 (1985) (*quoting* Restatement (Second) of the Law of Agency, § 1, cmt. a).  German law similarly provides that disclosure of the principal-agent relationship is decisive to the determination whether third parties will have any rights against or obligations to the principal.  *See generally §§ 167-81 BGB (German Civil Code).*

The First Amended Complaint is devoid of any factual allegation that even hints that LP Europe is authorized to act on behalf of Life Plus or that Life Plus controls LP Europe, except for the legal conclusion stated in Paragraph 20.   Without a proper

allegation of facts to support the legal conclusion that LP Europe acted as Life Plus's agent in terminating Plaintiff, Plaintiff's claims must fail.

Likewise, Plaintiff's conclusion that LP Europe is the "alter-ego" of Life Plus is an unfounded legal conclusion, which this Court should ignore. Under Arkansas law, it is "only when the privilege of transacting business in a corporate form has been illegally abused to the injury of a third person that the corporate entity should be disregarded." *Winchel v. Craig*, 55 Ark. App. 373, 380, 934 S.W.2d 946, 950 (1996). Under German law, the independence of business entities is disregarded only for serious reasons of equity and where there is proof of domination, undercapitalization, the commingling of assets or disregard of corporate formalities. §§ 15-19, 291-328 AktG (German Corporate Law Code). *See* Alting, Piercing the Corporate Veil in American and German Law—Liability of Individuals and Entities: A Comparative View, 2 Tulsa J. Comp. & Int'l L. 187 (1995).

Plaintiff has failed to allege a single fact tending to show that Life Plus had abused its corporate form to the injury of any third party, including Plaintiff, or that LP Europe is dominated by Life Plus, is undercapitalized, has commingled assets or has disregarded corporate formalities. Plaintiff simply concludes that LP Europe acted as the alter-ego of Life Plus—a conclusion that is insufficient to sustain the First Amended Complaint. Because Plaintiff's action is entirely premised on his conclusory allegation that the acts of LP Europe are attributable to Life Plus, the failure of the premise dooms Plaintiff's claims. Plaintiff has not stated a cause of action entitling him to relief against Life Plus for the alleged conduct of LP Europe. The First Amended Complaint must therefore be dismissed.

**Plaintiff's Contract Claims Should Be Dismissed for the Further Reason that They Fail to State Claims Under German Law for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing.**

Federal courts, in deciding choice-of-law questions, apply the choice-of-law rules of the state in which they sit. *Heating & Air Specialists, Inc. v. Jones*, 180 F.3d 923, 928 (8th Cir. 1999). In Arkansas, when parties to a contract related to multiple jurisdictions do not contract as to which jurisdiction's law govern the contract, the law of the jurisdiction with the most significant relationship to the contract will govern the contract. *Ducharme v. Ducharme*, 872 S.W.2d 392 (Ark. 1994). In this case, that jurisdiction is Germany, and Plaintiff has failed to state a claim under German contract law.

Plaintiff's Second and Third Causes of Action allege, respectively, that Life Plus "breached its contract with Plaintiff" by "terminating its contractual relationship with Plaintiff because of Plaintiff's religion," and that Life Plus "breached its implied covenant of good faith and fair dealing" by "terminating its contractual relationship with Plaintiff because of Plaintiff's religion." First Amd. Complt. at ¶¶ 31, 34. The "contractual relationship" that is the basis of Plaintiff's claims was formed, performed, and terminated in Germany, not in Arkansas, and it is Germany, rather than Arkansas, that has the more significant relationship with the matters pleaded in Plaintiff's Second and Third Causes of Action. Consequently, German law is controlling on the question of the sufficiency of Plaintiff's contract claims.

Again, the Court must look to Arkansas' choice-of-law rules. *See Heating & Air Specialists*, 180 F.3d at 928. In contract cases, Arkansas courts will apply the "significant contacts" test. *See Ducharme v. Ducharme*, 872 S.W.2d 392 (Ark. 1994) (applying law of state with most significant relationship to issue at hand in contract

disputes); *see also Roofing & Sheet Metal Servs. Inc. v. La Quinta Motor Inns*, 689 F.2d 982 (11th Cir. 1982) (stating that Arkansas would likely employ some version of the most significant contacts test, such as that of the Second Restatement, Conflict of Laws); *Standard Leasing Corp. v. Schmidt Aviation, Inc.*, 264 Ark. 851, 576 S.W.2d 181 (1979); and *McMillen v. Winona Nat'l Savings Bank*, 279 Ark. 16, 648 S.W.2d 460 (1983).

In this case, all the significant contacts for the matters relevant to Plaintiff's contract claims are with Germany, not Arkansas. With deliberate vagueness, Plaintiff complains of the discriminatory termination of his "contractual relationship," but his pleading refers to not one but *two* contracts: his membership in the Diamond Bonus program offered by Life Plus, and his underlying contract with LP Europe. Plaintiff alleges that the LP Europe contract was terminated because of Plaintiff's religious affiliation. First Amd. Complt. at ¶¶ 19, 21-25. Plaintiff does not specifically allege that his Diamond Bonus membership was terminated, and his vague allegation concerning the "terminat[ion of] the contractual relationship between Plaintiff and Defendant" states only that the "relationship" ended as an "effect" of the termination of the LP Europe contract. First Amd. Complt. at ¶ 20. Plaintiff thus purports to allege "termination because of religion" only with respect to the LP Europe contract, and his Second and Third Causes of Action arise from that contract alone. Hence the relevant contacts are those of the LP Europe contract.

The LP Europe contract is more than "significantly" related to Germany—it is totally related to Germany, not Arkansas. Plaintiff has at all times been a citizen and resident of Germany. It was in Germany that he agreed to become an independent contractor for LP Europe as part of its network of distributors. The performance of his

contractual obligations was carried out in Germany. The termination of the LP Europe contract occurred in Germany. Each of these factors weighs heavily in a choice-of-law analysis (*see Heating & Air Specialists*, 180 F.3d at 930, and Restatement (Second) of Conflict of Laws § 188(2)), and the combination is decisive.

There is no similar or comparable contact between the LP Europe contract and Arkansas. The only Arkansas contact in this case relates to Plaintiff's Diamond Bonus membership, and, as stated previously, the Diamond Bonus program is irrelevant to Plaintiff's contract claims because he has not claimed that his membership was terminated because of his religion. Even if he had so claimed, however, Arkansas would still lack significant contacts with the contract termination that is the subject of Plaintiff's action. Plaintiff's Diamond Bonus membership was ancillary to and conditioned upon the LP Europe contract. Plaintiff's authority to sell Life Plus® Products came only from his agreement with LP Europe, and there was no separate, independent or additional authority to be derived from Diamond Bonus membership. A Diamond Bonus member can retain membership only so long as he is in good standing under a regional agreement, such as the LP Europe contract. Indeed, a contractor who loses his authority under a regional agreement to deal in Life Plus® Products has no way to perform as contemplated by the Diamond Bonus program and cannot earn the sales incentive bonuses the program provides. Because Plaintiff's Diamond Bonus membership was ancillary to his German contract with LP Europe, all of the factors demonstrating that Germany has the most significant contacts with the LP Europe contract apply with equal weight to a contacts analysis of Diamond Bonus membership.

German law governs the rights and obligations of the parties under both the LP Europe contract *and* Plaintiff's Diamond Bonus membership notwithstanding the fact that the letter agreement extending membership to Plaintiff in February 2000, provided that "if any of the terms need to be *interpreted*, Arkansas law will apply."  First Amd. Complt. at ¶ 16 (emphasis added).  In *Heating & Air Specialists*, 180 F.3d at 929-30, the Eighth Circuit held that a choice-of-law provision that is limited to the *interpretation* of a contract is much narrower than those clauses which provide that "the law of a particular state would 'govern the contract,'" and that the "use of such narrow language" means only that the chosen state's "rules of contract construction should apply," and not that the substantive law otherwise applicable to the contract should be displaced. As in *Heating & Air Specialists*, the choice-of-law provision in the Diamond Bonus letter agreement is expressly limited in its effect to matters of contract construction—matters that are in no way implicated in Plaintiff's claims for unlawful termination.  Those claims are most significantly related to Germany, and therefore are governed by German law.

Under German law, Plaintiff cannot maintain the contract claims he has to asserted in his Second and Third Causes of Action.  Those causes of action purport to allege that his "contractual relationship" was terminated "because of Plaintiff's religion"—which Plaintiff identifies in his pleading as Scientology.  Under German law, however, Scientology is not a religion, but is instead a business association. The Federal Labor Court of the Federal Republic of Germany (one of Germany's five supreme courts) has held, in a detailed and comprehensive opinion, that the Church of Scientology (together with its "sister churches" and organizations) is not a "religious or ideological community within the meaning of [the German constitution]."  BAGE 5 AZB 21/94 at

pages 25-26. The court explained that under German constitutional case law, a group's mere assertion that it constitutes a religious community "does not in and of itself justify for itself and its members the invocation of the guarantee of freedom under [the German constitution]." *Id.* at page 23. The court went on to state that "if the religious or ideological doctrines [of a community] serve merely as a pretext for the pursuit of economic goals, it is no longer possible to refer to a religious or ideological community within the meaning of [the German constitution]." *Id.* at page 25. The court concluded that "[t]he religious or ideological doctrines [of Scientology] serve as a pretext for the pursuit of economic goals," *id.* at page 26, and that Scientology is not a religion but a commercial enterprise. *Id.* at pages 28, 39, 54 and *passim.*

Because Scientology is not a religion under German law, Plaintiff cannot maintain that his adherence to Scientology and the alleged termination of his "contractual relationship" as a result of such adherence amounts to "termination because of Plaintiff's religion" under German law. Plaintiff has alleged no cause or reason for his termination apart from his "religion," and he has alleged no other basis for claims for breach of contract and of the implied covenant of good faith and fair dealing. His contract claims are therefore insufficient under German law and should be dismissed.

## ALTERNATIVELY, THE COURT SHOULD DISMISS THIS ACTION ON GROUNDS OF FORUM NON CONVENIENS.

### The Court Should Not Defer To Plaintiff's Inappropriate Forum Selection.

For the reasons stated previously, each cause of action of Plaintiff's First Amended Complaint is seriously defective, and there are multiple grounds for dismissing this action outright. Should the Court nevertheless conclude that some part of the case may survive, with the benefit of further amendment or otherwise, the Court should

decline to exercise jurisdiction here and should dismiss Plaintiff's action on grounds of *forum non conveniens*.

As is clear on the face of the First Amended Complaint, this is an action brought by a German citizen for the alleged wrongful termination (in Germany) of a contract Plaintiff entered into with a British firm for the distribution of products and the establishment of sales networks in Germany. Plaintiff's selection of Arkansas as the forum for the litigation was doubtless motivated by his perception that the substantive and procedural laws here are more favorable to him than are those of his own nation. Regardless of Plaintiff's perceptions, the question for the Court is whether Plaintiff's choice of an Arkansas forum will "best serve the convenience of the parties and the ends of justice." *Koster v. Lumbermens Mutual Casualty Ins. Co.*, 330 U.S. 518, 527 (1947).

In answering that question, the Court should not accord deference to Plaintiff's forum selection. In *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256-57 and nn. 23, 24 (1981), the Supreme Court observed that "a foreign plaintiff's choice of forum" is routinely given little weight, deference being reserved for plaintiffs who choose their home fora. *Piper Aircraft* was a product liability action arising from an airplane crash in Scotland that resulted in six fatalities. The administratrix for the estates of the deceased passengers, all of whom were British nationals, sued in federal court in California. The plaintiff frankly acknowledged that the forum had been selected because its substantive laws were more favorable than those of Scotland. *Id.* at 239-40. The case was transferred to the Middle District of Pennsylvania, where the district court granted the defendants' motion to dismiss for *forum non conveniens*. *Id.* at 240-41. The Third Circuit reversed, holding that *forum non conveniens* dismissal was never appropriate

where the substantive law of the alternative forum was unfavorable to the plaintiff. *Id.* at 246.

In reversing the Third Circuit, the Supreme Court held that no single factor should dominate a *forum non conveniens* analysis, and that undue consideration for an unfavorable change in law would effectively undermine the entire doctrine, inasmuch as plaintiffs' forum selection is often based on perceptions of which law is "most advantageous." *Id.* at 247, 249-50. The Court also discussed the factors comprising the *forum non conveniens* test for litigation brought by foreign plaintiffs. *Id.* at 241 and n. 6, citing *Koster*, 330 U.S. at 524, and its companion case, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947). First, courts must consider whether the remedies available in the alternative forum are "clearly inadequate or unsatisfactory." *Piper Aircraft* 454 U.S.. at 254 and n. 22. Notably, the remedies afforded by the alternative forum need not be equivalent to those available in the chosen forum; the adequacy test is satisfied if the cause of action and some meaningful remedy are generally available. *See id.* at 251-55 and nn. 19, 22.

Once the initial factors are satisfied, matters of private and public interest must be considered. The Supreme Court described the "private interest" factors as including the relative ease of access to evidence and witnesses, the ability to implead third parties, and other "practical problems." *Id.* at 241 n.6 and 259. The "public interest" factors include the relative importance each forum places on the subject matter of or issues involved in the litigation, choice-of-law issues, and the administrative burdens the case would impose. *Id.* at 241 n. 6 and 260.

All of the factors relevant to the *Piper Aircraft* test favor Germany as the appropriate forum for Plaintiff's claim, while none of those factors favors Arkansas. This case represents forum-shopping in the most obvious sense; Plaintiff, dissatisfied with the prospects of his case in the courts of his homeland, has looked for what he hopes will be more fertile ground—no matter how remote that may be from the locus of his claim. This Court should not defer to Plaintiff's choice, but should apply *Piper Aircraft* and dismiss his action.

### A German Forum Is Adequate And Available.

Although current German law does not permit Plaintiff to contend that Scientology is a religion and would therefore preclude his claim that his contractual relationship was terminated "because of his religion," contract rights are codified in German law and an adequate range of remedies is available for a breach, including for unjust or otherwise inappropriate termination of a contract. *See* § 89b HGB (German Commercial Code). Thus, to whatever extent Plaintiff may be able to plead a cause of action that is not wholly grounded on his "religious" affiliation with Scientology, German courts are open to him, and contract remedies are available.[4]

### All Private Interest Factors Favor A German Forum.

The private interest factors under *Piper Aircraft* plainly favor Germany as the forum for this litigation. Plaintiff lives and worked there, of course, and witnesses to his performance pursuant to his contractual relationship, including his customers and business associates, are for the most part in Germany. In contrast, in Arkansas there are

---

[4]    It should be noted that German law also affords protection against religious discrimination, *see* Art. 4 GG (German Federal Constitution) and that the remedies for such discrimination are unavailable to Plaintiff only because his affiliation—Scientology—has been held not to be a bona fide religion under the German constitution.

no material witnesses to the formation, performance or termination of the LP Europe contract.

Of even greater significance is the fact that LP Europe—the entity with which Plaintiff had his primary contract and the entity he alleges terminated him "because of his religion"—is not amenable to process in Arkansas and cannot be compelled to be a party or provide evidence in this forum. *See* Affidavit of Robert Christian, ¶ 3. Because LP Europe does conduct business in Germany, however, it presumably can be compelled to give evidence there and, further, could be impleaded or otherwise joined as a party.

It would defy all logic to conduct this case by airlift and to transport to this country for purposes of discovery and trial the witnesses and documentary evidence that are not present in Arkansas but are readily available in Germany. It would defy fairness to conduct this case here, when it is likely that to do so would result in the absence from the proceedings of LP Europe. [5]

### All Public Interest Factors Favor Germany.

Arkansas has no public policy interest in contracts made, performed and terminated in Germany. Germany, on the other hand, has a strong policy interest in contracts made in its jurisdiction by one of its own citizens and performed under its law. As we have stated above, under choice-of-law principles, the substantive law of Germany will govern Plaintiff's claim. Although this Court is capable of applying German law, it is surely not as familiar with that law as are the courts of Germany, and there is no reason for this Court to accept the burden. There is also no reason for the Eastern District of

---

[5]      It appears plainly on the face of the First Amended Complaint that the presence of LP Europe is "indispensable" to the present case, and that absent LP Europe, the Court would be compelled to consider, pursuant to Rule 19(b), Fed. R. Civ. P., "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed . . . ."

I:\JPG\LIFEPLUS\AKYAR\Pleadings\Brief in Support of Motion To Dismiss 1st Am Compl - Final.doc

Arkansas to accept the administrative burdens of a case (including the burdens of additional docket congestion and, potentially, of jury duty) when the case is unrelated to this forum.

"[T]he convenience of the parties and the ends of justice," *Koster*, 330 U.S. at 527, are poorly served by Plaintiff's choice of forum. If the Court does not finally dismiss the present action in its entirety pursuant to Rules 12(b)(1) and (6), any remaining claim should be dismissed on grounds of *forum non conveniens*.

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss Plaintiff's First Cause of Action for want of an Article III case or controversy. Pursuant to Rule 12(b)(6), the Court should dismiss the First Amended Complaint in its entirety for failure to allege sufficient facts upon which relief can be granted; in addition and alternatively, Plaintiff's Second and Third Causes of Action should be dismissed for failure to state causes of action under German law. Alternatively, the Court should dismiss this case on grounds of *forum non conveniens*.

Respectfully submitted,

GILL ELROD RAGON
OWEN & SHERMAN, P.A.
425 West Capitol Avenue, Suite 3801
Little Rock, Arkansas 72201
(501) 376-3800

By: _____
      John P. Gill (ABA #62007)
      Derrick Davidson (ABA # 90214)

OF COUNSEL:
Stephen Fedo
NEAL, GERBER & EISENBERG
2 North LaSalle Street
Chicago, Illinois 60602
(312)269-8000

JOANN UNDERWOOD, P.A.
267 E. Main Street
Batesville, Arkansas 72501
(870)698-3571

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing pleading was served by first class mail, postage prepaid, on the attorney-of-record below on this 4th day of November, 2002:

Spencer F. Robinson, Esquire
Ramsay, Bridgforth, Harrelson and Starling, LLP
P.O. Box 8509
Pine Bluff, Arkansas 71611-8509

Kendrick Moxon
Moxon & Kobrin
3055 Wilshire Blvd., Suite 900
Los Angeles, California 90010

                                    Derrick Davidson

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

# *Exhibits Attached to Original Document in Courts's Case File*