

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 1 0 2003

JAMES W. McCORMACK, CLERK
By:_____
                    DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### NORTHERN DIVISION

THOMAS ERNST AKYAR                                    PLAINTIFF

VS.                        CASE NO. 1-02-CV-00060 SWW

LIFE PLUS INTERNATIONAL                               DEFENDANT

### DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

#### Introduction

Plaintiff lacks standing to bring the statutory claim asserted in the first count of his complaint because, as a German citizen complaining of discrimination in Germany, he has suffered no injury cognizable under the Arkansas Civil Rights Act of 1993, Ark. Code Ann. §§ 16-123-101 *et seq.* (the "Arkansas Act").  Plaintiff's second and third counts also fail because he has not alleged a breach by Life Plus International ("Life Plus") of a specific contract provision, and neither Arkansas common law nor Arkansas statutes allow Plaintiff a cause of action for alleged religious discrimination.

In response to Life Plus' motion, Plaintiff presents various "facts" that were neither specifically pleaded in nor implied by the allegations contained in his Amended Complaint. Many of his statements of "fact" are erroneous and misleading.[1]  But the fundamental issue raised in Life Plus' motion to dismiss is legal, not evidentiary.  It is not the facts but the law that defeats Plaintiff's standing.  The principal question before this Court is whether the Arkansas

---

[1]      Procedurally, now is not the occasion to refute the substance of Plaintiff's misstatements. Defendant strongly objects to the form of those statements, however.  The Declaration of Thomas Ernst

Act confers civil rights on foreign nationals who are not present within the State of Arkansas and grants standing to such persons to redress civil-rights injuries they allegedly suffered in a foreign country. On this legal question, Plaintiff has little to say about the law, arguing simply that, in the absence of express statutory provisions to the contrary, the Arkansas Act implicitly grants standing to foreign claimants. (Plaintiff's Br. at 6-8.) Instead of focusing on the law, Plaintiff emphasizes what he alleges to be the underlying "facts" that he hopes will establish a sufficient nexus with the State of Arkansas for him to claim rights under the Arkansas Act. Plaintiff's effort is unavailing, however, because none of the contacts he alleges is material here to the question of whether the Arkansas Act applies to him at all.

Regardless of his alleged contacts with Life Plus in Arkansas, Plaintiff has not claimed and cannot claim that he sold Life Plus® Products in Arkansas or that Life Plus' alleged discrimination injured him anywhere but in Germany, where he is a citizen, where he carried on his business, and where he was located when his contractual relationship was terminated. The Arkansas Act extends no civil rights to persons who are not present within the State of Arkansas and imposes no liability upon Arkansas citizens who discriminate against persons who are not present in the State of Arkansas. As shown *infra*, neither the "facts" asserted by Plaintiff nor his cursory argument on statutory construction are sufficient to overcome the presumption against the extraterritorial application of statutes—a presumption that has been firmly established in American jurisprudence since the early years of the Republic.

Because the Arkansas Act does not apply to Plaintiff, he has not suffered any injury cognizable thereunder, and no case or controversy is or could be presented by him. Plaintiff's lack of standing to pursue a statutory claim similarly precludes analogous claims under Arkansas

---

consists almost entirely of hearsay and statements lacking proper foundation. Paragraphs 3, 4, 7, 9 and 10 of the Declaration are inadmissible and should be stricken.

common law and "public policy." Thus, none of Plaintiff's three asserted causes of action can withstand the motion to dismiss, notwithstanding the new "fact" matters offered by Plaintiff in opposition to the motion. Indeed, the only pertinent factual matters presented by Plaintiff provide further reasons why this action ought to be litigated in Germany, if at all, and thus support Life Plus' alternative motion to dismiss the complaint on grounds of forum non conveniens.

### The Arkansas Act Has No Extraterritorial Application And Affords No Relief For Alleged Discrimination Suffered In Germany.

Plaintiff, citing *Verizon Maryland Inc. v. Public Service Comm.*, 122 S.Ct. 1753 (2002), argues that Life Plus has not properly raised the question of subject matter jurisdiction under Rule 12(b)(1). (Pl. Brief at 5.) *Verizon* does not help Plaintiff. There, federal jurisdiction was invoked pursuant to 28 U.S.C. § 1331 because the case involved the question of whether a federal statute precluded the defendant from taking the action challenged by the plaintiff. The Court held that jurisdiction under § 1331 was proper because, regardless of the eventual outcome of the inquiry regarding the correct interpretation of the statute, the inquiry was itself not frivolous but was, for jurisdictional purposes, a proper federal question. *Id.* at 1758-59. *Verizon* thus says nothing about subject matter jurisdiction where, as in the present case, a plaintiff's assertion of standing is based on a statute that, according to long-established precepts, does not afford him standing.

Even if the Court were to find, however, that a Rule 12(b)(1) motion is not the appropriate procedural vehicle by which to note the lack of justiciability of Plaintiff's First Cause of Action, the Court should still decide the matter based on the arguments presented. Plaintiff has defended his pleading as though the pending motion had been brought pursuant to Rule 12(b)(6) (*see* Pl. Brief at 5-11), and it is clear that the Court may treat Life Plus' Rule 12(b)(1)

2

motion as one brought under Rule 12(b)(6).  *See, e.g., Trimble v. Asarco, Inc.*, 232 F.3d 946, 952-53 (8th Cir. 2000).  Under either provision, Plaintiff has no basis for proceeding with a claim under the Arkansas Act.

Plaintiff has offered no evidence that the Arkansas General Assembly intended to extend relief to persons who allegedly have suffered discrimination outside the territorial limits of the State of Arkansas, and notwithstanding the broad language employed in the Arkansas Act, the statute's reach is not unlimited,[2] because "[i]t is a longstanding principle of American law" that legislation is meant to apply only within the territorial jurisdiction of the enacting legislature, "unless a contrary intent appears."  *E.E.O.C. v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991) ("*Aramco*"), citing *Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 285 (1949).  *See also Johnson v. Eisentrager*, 339 U.S. 763, 783 (1950) ("Extraterritorial application of organic law would have been [a] significant . . . innovation in the practice of governments . . .").

The canon of statutory construction by which legislation is presumed to have internal application only was applied in one of the earliest opinions of the Supreme Court.  *Murray v. Schooner Charming Betsy*, 2 Cranch 64, 2 L.Ed. 208 (1804), involved the seizure of a vessel alleged to be involved in a violation of a statute proscribing "commercial intercourse between the United States and France and the dependencies thereof."  2 Cranch at 117, 2 L.Ed. at 226.  In searching for a manifestation of legislative intent, by "express words, or a very plain and necessary implication," that the statute authorized the seizure, Chief Justice Marshall observed that "an act of Congress ought never to be construed to violate the law of nations if any other possible construction remains . . . ."  2 Cranch at 118, 2 L.Ed. at 226.

---

[2]      "Words having universal scope, such as 'every contract in restraint of trade,' 'every person who shall monopolize,' etc., will be taken, as a matter of course, to mean only every one subject to such legislation, not all that the legislator subsequently may be able to catch." *American Banana Co. v. United Fruit Co.*, 213 U.S. 347, 357 (1909).

The presumption against extraterritoriality has been stated and applied by the Supreme Court many times. *See, e.g., Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 283-85 (1949); *Benz v. Compania Naviera Hidalgo*, 353 U.S. 138, 143-44 (1957); *McCulloch v. Sociedad Nacionel de Marineros de Honduras*, 372 U.S. 10, 20-21 (1963); *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 440 (1989); *Aramco*, 499 U.S. at 248-49; and *Smith v. United States*, 507 U.S. 197, 204 (1993).  It has been recognized and applied by the lower courts in innumerable cases. *See, e.g., United States v. De Leon*, 270 F.3d 90, 93 (1st Cir. 2001); *Kollias v. D & G Marine Maintenance*, 29 F.3d 67, 70-72 (2nd Cir. 1994); *Denty v. SmithKline Beecham Corp.*, 109 F.3d 147, 149 (3rd Cir. 1997); *Reyes-Gaona v. North Carolina Growers Ass'n*, 250 F.3d 861, 865-66 (4th Cir. 2001); *Robinson v. TCI/US West Communications, Inc.*, 117 F.3d 900, 906 (5th Cir. 1997); *Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998); *Air Line Stewards Ass'n v. Northwest Airlines, Inc.*, 267 F.2d 170, 178 (8th Cir. 1959); *Gushi Bros. Co. v. Bank of Guam*, 28 F.3d 1535, 1540 (9th Cir. 1994); *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207 (10th Cir. 2000); *Lopez v. Pan Am World Services, Inc.*, 813 F.2d 1118, 1119-20 (11th Cir. 1987); *Theus v. Pioneer Hi-Bred Int'l, Inc.*, 738 F.Supp. 1252, 1253 (S.D. Iowa, 1990); *O'Loughlin v. The Pritchard Corp.*, 972 F.Supp. 1352 (D.Kan. 1997).

Incredibly, Plaintiff dismisses this well-established canon of construction in a footnote, blandly stating that the cases that have articulated the presumption against extraterritorial application of statutes were "driven by the uniquely federal concern of international comity [and] reveal nothing about the Arkansas legislature's intent . . . ." (Pl. Brief at 8, n. 5.)  Plaintiff is wrong.  While international comity has historically been *one* of the concerns underlying the presumption, *see, e.g., Charming Betsy*, 2 Cranch 118, 2 L.Ed. 226, and *McCulloch*, 372 U.S. at 20-22, it is not the exclusive or even the predominant concern.  In *Foley Bros.*, 336 U.S. 281, the

Court decided the question of whether Congress intended the Eight Hour Law to apply to a contract between the United States and a private contractor for construction work in a foreign country. The contract required the construction firm, which was a United States citizen, to "obey and abide by all applicable laws . . . of the United States." 336 U.S. at 283. An American worker sued for overtime pay allegedly owed him under the Eight Hour Law for his work at the foreign site. Even though the parties were United States citizens engaged in a project for the United States government under a contract that was specifically subject to United States law, the Court found no indication of legislative purpose to extend "coverage [under the Eight Hour Law] beyond places over which the United States has sovereignty or has some measure of legislative control." *Id.* at 285. The canon of construction limiting legislation to intraterritorial jurisdiction "unless a contrary intent appears," *id.*, is derived from considerations even more fundamental than international comity (which, on the facts in *Foley Bros.*, was scarcely a consideration at all). The Court said that the presumption against extraterritorial application of statutes "is based on the assumption that Congress is *primarily* concerned with *domestic* conditions." *Id.* (emphasis added).[3]

The assumption noted in *Foley Bros.* is fundamental: a civil authority regulates the civil state to which it belongs, and generally will have little interest in or means to regulate matters in other states. Although the legislature *may* give a statute extraterritorial scope, *see Blackmer v. United States*, 284 U.S. 421, 437 (1932), it is extraordinary for it to do so. *See Eisentrager*, 339 U.S. at 783. Legislative intent to regulate extraterritorially therefore cannot be simply assumed or inferred; there must be a clear expression of the legislature's intent to address more than

---

[3]       *See also Smith v. United States*, 507 U.S. at 204 n. 5, where the Court specifically rejected the contention that "the presumption against extraterritoriality applies only if it serves to avoid" unintentional conflicts with the laws of other nations. The Court stated that, on the contrary, "the presumption is rooted in a number of considerations, not the least of which is the commonsense notion that Congress generally legislates with domestic concerns in mind."

"domestic conditions." Thus, as in *Foley Bros.*, courts have declined to apply domestic legislation in an international context even in cases where all parties were domestic. *See Air Line Stewards Ass'n v. Northwest Airlines, Inc.*, 267 F.2d 170, 178 (8th Cir. 1959) (holding that the Railway Labor Act does not apply to United States crews of United States carriers with respect to flights outside of United States territory).

The principle that a statute's reach ends at the border has been applied particularly strictly in the area of civil rights. Courts have assiduously refused to give international scope to anti-discrimination statutes even where, as in the present case, the plaintiff alleges some domestic nexus for the claim. In *Theus v. Pioneer Hi-Bred Int'l, Inc.*, 738 F.Supp. 1252, 1253 (S.D. Iowa 1990), the court rejected a claim under 42 U.S.C. § 1981 that a domestic firm had discriminatorily interfered with the plaintiff's prospective contracts in the Ivory Coast. The plaintiff asserted (as does Plaintiff here) that the discriminatory decision was made in the United States, but in dismissing the complaint, the court held that the claim arose in the Ivory Coast, the site of the contracts interfered with. In *Reyes-Gaona v. North Carolina Growers Ass'n*, 250 F.3d 861, 865-66 (4th Cir. 2001), the plaintiff—a foreign national residing in his home country—sent an application to a United States employer for a job in the United States, and the employer allegedly rejected him because of his age. The court held that the Age Discrimination in Employment Act ("ADEA") does not extend to an extraterritorial denial of employment, even where the denial issued in the United States. In another ADEA case, *Lopez v. Pan Am World Services, Inc.* 813 F.2d 1118, 1119-20 (11th Cir. 1987), the court invoked the presumption against extraterritorial effect where a United States citizen had submitted an application to a United States employer in the United States for a position in Venezuela and was turned down;

because the "work station" would have been outside the United States, the ADEA was held not to apply.

Similarly, Plaintiff cannot avail himself of the civil rights and remedies conferred by the Arkansas Act simply by asserting that he entered into a contractual relationship with an Arkansas firm and that the decision to terminate him was made (or assented to) in Arkansas. Plaintiff's "work station" was in Germany, not Arkansas. He carried on the business that was the subject of his alleged contractual relationship with Life Plus in Germany, not Arkansas. Assuming *arguendo* that the termination of his contractual relationship was discriminatory, that discrimination and Plaintiff's alleged injury occurred in Germany, not Arkansas. *Foley Bros.*, *Aramco*, and all of the other cases cited *supra* teach that, absent a clear expression of contrary legislative intent, Plaintiff has no standing under the Arkansas Act on the facts he has alleged or could allege.

Contrary to Plaintiff's unsupported assertion that the case authority on extraterritoriality expresses a "uniquely *federal* concern" (Pl. Brief at 8, n. 5; emphasis added), nothing in the cases hints that state legislatures are *more* likely than Congress to seek to legislate on external matters. In fact, the presumption against the extraterritorial reach of statutes must be even stronger where state legislation is involved, because state governments generally have little occasion to speak to matters outside state boundaries and very little practical ability to regulate conduct occurring elsewhere. *See generally Restatement (Third) of the Foreign Relations Law of the United States* §§ 402, 403 (1987).

*Graver v. Kemper Corp.*, 133 F.3d 999 (7th Cir. 1998), like the present case, involved the construction of a state statute. There, the plaintiff alleged a violation of the Illinois Wage Payment and Collection Act. Although the employer was located in Illinois, "[t]he plaintiff is

not, and at no time relevant to this suit was he, a resident of Illinois.  Nor did he perform any work in Illinois; all the work that he did . . . was done in Spain." *Id.* at 1000.  The court held that the statute lacked "an extraterritorial reach":

> Its evident purpose is to protect employees *in Illinois* from being stiffed by their employers . . . . It is inconceivable that the framers of the statute meant to extend its protection to employees abroad, who would usually not even be U.S. citizens, let alone residents of Illinois.

*Id.*, (emphasis in original).

There is no doubt that Arkansas' canons of statutory construction are entirely consistent with those of the federal courts in presuming that statutes are not to be applied extraterritorially. *See Widmer v. Wood*, 243 Ark. 457, 459, 420 S.W.2d 828, 830 (1967); *Meekins v. Meekins*, 169 Ark. 265, 275 S.W. 337 (1925).  Plaintiff's attempt to limit *Widmer* to cases involving real estate is specious.  (Pl. Brief at 8.)  The controversy in *Widmer* did not center on real estate issues, but on statutory damages.  As the court stated, "the only contention urged by Widmer in the trial court and in this court is *the extraterritorial application of the treble damages statute.*  We hold that contention to be without merit."  *Widmer*, 243 Ark. at 459, 420 S.W.2d at 830 (emphasis added).  In *Meekins*, which the *Widmer* court cited for the general rule that statutes have no effect outside the state's boundaries, the question before the court was not about real estate, but was whether an Arkansas statute applied to render legitimate the child of an unmarried couple who resided in Louisiana at the time of the birth.  *Meekins*, 169 Ark. at 267, 275 S.W.2d at 338.

It is obvious that, with respect to the Arkansas Act, the presumption against extraterritoriality cannot be overcome.  The provision pertinent to this case, Section 16-123-107(a), reads as follows:

> The right of an otherwise qualified person to be free from discrimination because of race, religion, national origin, gender, or the presence of any sensory, mental, or physical disability is

> recognized as and declared to be a civil right.  This right shall
> include, but not be limited to:
>
>                 \* \* \*
>
> (4)  The right to engage in credit and other contractual transactions
> without discrimination . . . .

Section 16-123-107(b) provides that "[a]ny person who is injured by an intentional act of

discrimination in violation [of the foregoing subdivision] shall have a civil action in a court of

competent jurisdiction . . . ."

     Plaintiff's reading of this language is completely contrary to the presumption that such

breadth may never be assumed in the absence of specific legislative intent—intent which, of

course, is nowhere evident in the language of the Arkansas Act.  Indeed, as Life Plus noted in its

initial brief, when the legislature expressed its intent regarding extraterritorial application of the

statute, it was to foreclose that possibility.  Ark. Code Ann. § 16-123-102(4)(C) (defining an

"Employee" as not including a person employed outside the State of Arkansas).  In reply,

Plaintiff attempts to turn the legislature's intent on its head, arguing that the statute's express

geographical limitation with respect to "employees" must mean that such limitation is not

applicable to any other provision.  (P. Brief at 7 and n. 4.)  But the maxim, *expressio unius est*

*exclusio alterius*, like all such general guides to interpretation, "are not inflexible rules, and they

may be disregarded when the failure to do so would produce a result in disharmony with the

overall statutory scheme."  *Reynolds Metals Co. v. Arkansas Power & Light Co.*, 920 F.Supp.

991, 998 (E.D. Ark. 1996).

     Here, the statutory scheme cannot conceivably permit the virtually unlimited

extraterritorial application urged by Plaintiff.  If the civil rights and remedies conferred by the

Arkansas Act truly extended without geographical limitation to "any person," as Plaintiff

contends, nothing would limit civil rights actions by foreign citizens against Arkansas entities

that do business abroad.  In foreign countries, Arkansas businesses would thus be held to standards different from—and even contrary to—those that apply generally in those countries: for example, a Saudi Arabian woman could sue an Arkansas firm for requiring its contract with her to be countersigned by her male relative; or a Muslim in India could complain of religious discrimination by an Arkansas company that was following the social standard set there by the Hindu majority.  Indeed, if the Arkansas General Assembly really intended to make the Arkansas Act applicable to "any person," there would be no need for any Arkansas nexus whatsoever— apart from the constitutional requirements of minimum contacts—because the statute does not expressly limit the right of action under Section 16-123-107(b) to actions against Arkansas entities.[4]

The Arkansas General Assembly is not the United Nations, and the Arkansas Act is not intended to be universal human rights legislation.  Arkansas courts are not outposts for the Hague.  The Arkansas Act does not apply to Plaintiff and his claims.  He has suffered no injury cognizable under that statute, no order of court pursuant to that statute can redress his alleged grievances, and he has cloaked his claims with the Arkansas Act "solely for the purpose of obtaining jurisdiction" in this court.  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102-03 (1998). There is no Article III case or controversy arising here under the Arkansas Act, and Plaintiff's First Cause of Action must be dismissed pursuant to Rule 12(b)(1).[5]

---

[4]      In *Aramco*, 499 U.S. at 255, the Court commented on the E.E.O.C.'s *expressio unius* argument: "If petitioners are correct that the alien-exemption clause means that the statute applies to employers overseas, we see no way of distinguishing in its application between United States employers and foreign employers. Thus a French employer of a United States citizen in France would be subject to Title VII. . . . Without clearer evidence of congressional intent to do so . . . , we are unwilling to ascribe to that body a policy which would raise difficult issues of international law by imposing this country's employment-discrimination regime upon foreign corporations operating in foreign commerce."

## Plaintiff's Common Law Claims Fail To State
## Causes of Action Under Any Applicable Law.

Plaintiff has responded to Life Plus' motion to dismiss the two common law causes of action set forth in the First Amended Complaint by asserting (though, notably, not by pleading) facts in support of his conclusory allegation that Life Plus is the "alter ego" of LP Europe. (Pl. Brief at 8-9, 14-15, and Plaintiff's Declaration attached thereto.) Life Plus argued in its initial brief that Plaintiff's failure to plead the elements of alter ego liability doomed his effort to hold Life Plus culpable for his allegedly discriminatory termination by LP Europe.

However, Life Plus also seeks dismissal of Plaintiff's common law claims on the additional ground that German law, which is the law that must be applied to those claims, does not recognize Scientology as a religion. Hence, Plaintiff cannot maintain claims for breach of contract and of the implied covenant of good faith and fair dealing when the alleged breach was the discriminatory termination of his contract on account of his "religion"—Scientology. Although Plaintiff has cited four decisions of German courts which he contends demonstrate that Scientology is recognized as a religion under German law, he argues that German law is "irrelevant to the present proceedings." (Pl. Brief at 16.)[6] Without substantively responding to Arkansas' choice-of-law principles, Plaintiff maintains his common law claims are grounded on Arkansas law. (*Id.*)

---

[5]     "[A] case can be so utterly lacking in merit that the proper disposition of it is dismissal under Rule 12(b)(1) of the civil rules (lack of subject matter jurisdiction) rather than under Rule 12(b)(6) (failure to state a claim)." *In re Brand Name Prescription Drugs*, 123 F.3d 599, 613 (7th Cir. 1997).

[6]     Although Plaintiff argues that German law is irrelevant, his perfunctory conclusion regarding the German decision previously submitted by Life Plus and his misleading characterization of the four cases attached to his brief require reply. The opinion of the Federal Labor Court of the Federal Republic of Germany reported at BAGE 5 AZB 21/94 is a decision of one of Germany's five supreme courts. Three of the four the cases tendered by Plaintiff are decisions of inferior courts. In the case submitted by Life Plus, the court's finding that Scientology lacks the indicia of a religion under the German constitution was not *dicta*, as Plaintiff contends, but was a central holding of the case. The statements regarding Scientology in the one high court decision tendered by Plaintiff, however, are clearly *dicta*, as the court

Since Plaintiff has now made it clear that he means to rely solely upon Arkansas law, Arkansas law requires the dismissal of his common law claims. Plaintiff has not alleged that Life Plus did not have the contractual right to terminate his contract under the terms of that contract, so his alleged "breach" must arise from statutory or common law rather than the contract itself. Actions for redress of unlawful discrimination under the law of Arkansas (and elsewhere) are *statutory* creations. An action for discrimination based on religion does not exist in Arkansas common law. Absent *statutory* authority, Plaintiff cannot complain that the allegedly discriminatory termination of his contractual relationship was in breach of any contract term implied[7] as a matter of Arkansas common law or public policy. On matters of civil rights, public policy is expressed only through statutes, the statements of the executive agencies charged with enforcing them, and the decisions of the courts applying them. *See Violette v. Int'l Business Machines Corp.*, 962 F.Supp. 446, 449-50 (D. Vt. 1996) ("discrimination claims are unknown at common law and are solely statutory creations"); *Tallman v. Tabor*, 859 F.Supp. 1078, 1089 (E.D. Mich. 1994); *Sherman v. Optical Imaging Systems, Inc.*, 843 F.Supp. 1168, 1181 (E.D. Mich. 1994). *See also Smith v. Chicago School Reform Bd. of Trustees*, 165 F.3d 1142, 1151 (7th Cir. 1999).

In this case, the Arkansas Act is the only statute that could give rise to the public policy on which Plaintiff purports to rely, but for the reasons stated previously, the Arkansas Act does not apply to Plaintiff. He can no more claim the protection of Arkansas' antidiscrimination policy than he can the rights conferred by the Arkansas Act. If Plaintiff tried to state causes of action under Arkansas common law, he has failed to do so, and those claims should be dismissed.

---

plainly indicated there was no need in that case to determine whether the particular Scientology entity was a profit-making organization or a religious one.

**Any Claims Not Dismissed Outright Should Be Dismissed
On Grounds of Forum Non Conveniens and Litigated in Germany.**

Plaintiffs response in opposition to Life Plus' motion to dismiss actually presents further reasons why, if the case is not dismissed outright, it should be dismissed here on grounds of forum non conveniens and left to proceed in a German court.

Plaintiff has attached to his brief four decisions of German courts which he contends demonstrate that "numerous courts in Germany have recognized Scientology's status as a religion" (Pl. Brief at 16), contrary to the holding of the Federal Labor Court at BAGE 5 AZB 21/94. Although a careful reading of all of the German cases that have been presented here suggests that Plaintiff's contention regarding German law is dubious, it is at least arguable that Scientology's status under German law is unsettled, and that the courts of that nation are divided on the question. If that is so, the resolution of the question should come from a German court, not this Court.

Plaintiff's other attachments underscore another factor that favors proceeding with this case in Germany: the availability of witnesses. In his Declaration, at ¶¶ 6 and 9, Plaintiff identifies two material witnesses to events surrounding his termination. They are Gaby Steiner and Ina Hertel, both of whom are German nationals who reside outside the subpoena powers of this Court. Neither of them is an officer or employee of Life Plus, and neither can be compelled to appear as witnesses at trial in the Eastern District of Arkansas. Plaintiff also identifies (Declaration, at ¶ 10, and Declaration Ex. F) a third non-party witness, Steven Maoudis. Mr. Maoudis claims to be a former employee of LP Europe and also claims to have knowledge of Plaintiff's activities in connection with Life Plus® Products. Mr. Maoudis apparently resides in Birmingham, England, and therefore cannot be compelled to testify at trial in Arkansas. It is

---

[7]    Of course, Plaintiff has not alleged that his termination breached any *express* contract provision.

possible that, under the regulations of the European Union, his testimony could be compelled in a German court. In any event, his proximity to Germany might make it easier for the parties to obtain his cooperation there than in proceedings in the United States.

Other than his repeated (and, for the reasons stated previously, erroneous) contention that his claims legitimately arise under Arkansas law, Plaintiff has only two objections to the forum non conveniens motion. Neither objection has merit.

First, Plaintiff states that Life Plus "has not expressly made itself amenable to process in Germany nor waived any objections it may have to an assertion of personal jurisdiction over it by a German court." (Pl. Brief at 18.) While it is correct that Life Plus has not done so *expressly*, consent to personal jurisdiction is normally an indispensable condition for dismissal on grounds of forum non conveniens. The filing of a motion to dismiss on those grounds should therefore be understood as an expression of consent to jurisdiction in the alternative forum. To remove all doubt on the matter, Life Plus submits such consent herewith, in the form of the supplemental affidavit of Robert Christian.

Plaintiff's other objection is that Arkansas is Life Plus' home forum, and dismissal for forum non conveniens from a defendant's home forum "is available only in extremely rare circumstances." (Pl. Brief at 18.) Plaintiff grossly overstates his point. In *Reid-Walen v. Hansen*, 933 F.2d 1390, 1395 (8th Cir. 1991), the case upon which Plaintiff relies, the fact that the moving party resided in the forum was not determinative of the question, but was only one of several factors considered by the court. Under *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981), no single factor can determine the forum non conveniens inquiry. Certainly the Supreme Court does not view dismissal from a defendant's home forum to be an "extreme" measure, inasmuch

as the dismissal affirmed in *Piper Aircraft* was from defendant Piper Aircraft Company's home forum. *See* 630 F.2d 149, 154 (3rd Cir. 1980).

In the present case, the weight of the pertinent factors—including the factors perhaps unwittingly emphasized by Plaintiff himself—favor dismissal in this forum and initiation of proceedings before a German court, where Plaintiff ought to have commenced his claims in the first place.

### Conclusion

Plaintiff lacks standing to bring his first count because as a German citizen complaining of a wrong in Germany he has suffered no injury cognizable under the Arkansas Act, and thus this Court has no power to hear his complaint. Plaintiff's second and third counts also fail because Plaintiff has not alleged a specific breach of contract by Life Plus, and neither Arkansas common law nor statutory law provides Plaintiff a cause of action for breach of contract based on religious discrimination.

For all of the foregoing reasons, and for the reasons stated in Life Plus' initial brief, the Court should dismiss the First Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure, or alternatively, should dismiss this action on grounds of forum non conveniens.

Respectfully submitted,

GILL ELROD RAGON
OWEN & SHERMAN, P.A.
425 West Capitol Avenue, Suite 3801
Little Rock, Arkansas 72201
(501) 376-3800

By: _____
John P. Gill (ABA #82007)
Derrick Davidson (ABA # 90214)

16

OF COUNSEL:
Stephen Fedo
NEAL, GERBER & EISENBERG
2 North LaSalle Street
Chicago, Illinois 60602
(312)269-8000

JOANN UNDERWOOD, P.A.
267 E. Main Street
Batesville, Arkansas 72501
(870)698-3571

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was served by first class mail, postage prepaid, on the attorney-of-record below on this _10_ day of January, 2003:

Spencer F. Robinson, Esquire
Ramsay, Bridgeforth, Harrelson and Starling, LLP
P.O. Box 8509
Pine Bluff, Arkansas 71611-8509

Kendrick Moxon
Moxon & Kobrin
3055 Wilshire Blvd., Suite 900
Los Angeles, California 90010

_____
John P. Gill

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### NORTHERN DIVISION

**THOMAS ERNST AKYAR**                    **PLAINTIFF**


**VS.**                    **CASE NO. 1-02-CV-00060 SWW**


**LIFE PLUS INTERNATIONAL, INC.**         **DEFENDANT**


### <u>AFFIDAVIT OF ROBERT E. CHRISTIAN</u>

STATE OF ARKANSAS          )
                           )
COUNTY OF JACKSON          )

Robert E. Christian, being first duly sworn, deposes and states as follows:

1.      I am over 18 years of age and fully competent to make this affidavit.  I have personal knowledge of the facts stated herein, and to my knowledge, all of the facts stated herein are true and correct.

2.      The Defendant in this action is an Arkansas general partnership.  In my capacity as trustee of the LGA Trust, I am one of the partners .  I have also had a role in the management of the Defendant.  I have been duly authorized by the partnership to make this affidavit and give the following consent on behalf of the partnership.

3.      The Defendant will consent to jurisdiction in any court of the Federal Republic of Germany competent to exercise same with regard to any or all claims the

Plaintiff has or may have against the Defendant that arise, or are alleged to have arisen, from the termination of Plaintiff's contractual relationship with the Defendant.

_____
Robert E. Christian


SUBSCRIBED AND SWORN TO BEFORE ME
on this ____9TH____ day of January 2003

_____
Notary Public

My Commission Expires:

____7-1-2003____